THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN COLEMAN, Defendant-Appellant.

First District (6th Division)   No. 1—89—0573

Opinion filed April 19, 1991.

998

Randolph N. Stone, Public Defender, of Chicago (Joseph M. Gump and Robert Guch, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kathleen F. Howlett, and Sherry L. Biedar, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Defendant, Melvin Coleman, was charged by indictment with 12 counts of aggravated criminal sexual assault, two counts of criminal sexual assault, one count of attempted murder, one count of aggravated battery, three counts of armed violence, three counts of aggravated kidnapping, two counts of kidnapping, and one count of unlawful restraint. Following a bench trial, defendant was convicted of all charges and was sentenced to a term of 30 years in the Illinois Department of Corrections on 12 counts of aggravated criminal sexual assault and on one count of criminal sexual assault.

On appeal, defendant contends that (1) the trial judge abused his discretion in sentencing him without first conducting a sentencing hearing; (2) he was deprived of the right to a fair trial because defense counsel was not given an opportunity to make or waive closing argument; (3) the trial court erred in convicting and sentencing him on 12 counts of aggravated criminal sexual assault and on one count of criminal sexual assault where the evidence established that he committed only three acts of penetration; and (4) he was deprived of the right to due process where the trial judge considered his presentence investigation report prior to adjudicating the case on the merits.

The record reveals that defendant was arrested on December 28, 1985. A presentence investigation report was ordered on September 18, 1986, and was completed on October 6, 1986. On November 24, 1986, defendant was found unfit to stand trial and was remanded to the custody of Chester Mental Health Center of the Illinois Department of Mental Health and Developmental Disabilities. In February 1988 and again in March 1988, Robert A. Reifman, director of the Psychiatric Institute of the Circuit Court of Cook County, found that

with medication, defendant was mentally fit for trial, and Reifman stated that in his opinion defendant was legally sane at the time of the alleged offense. In October 1988, Albert H. Stipes, staff psychiatrist for the Psychiatric Institute of the Circuit Court of Cook County, also found that, with medication, defendant was fit for trial, and Stipes stated that in his opinion defendant was legally sane at the time of the alleged offense. Defendant was tried on all charges on February 15, 1989.

The evidence adduced at trial established that on December 27, 1985, the complainant, then aged 46, was working as a cleaning woman and supervisor in the 100 North La Salle Building in Chicago, Illinois. At approximately 5:30 p.m. that evening, after cleaning an office on the 23rd floor, complainant stepped out into the hallway and saw defendant standing near the elevators on that floor. Complainant summoned an elevator, but when it arrived, defendant stood in front of her, preventing her from entering it. Defendant then pulled a knife from his pocket and ordered complainant into a nearby restroom. Complainant screamed for help, and a struggle ensued during which complainant grabbed the hand in which defendant held the knife, but he pulled it back and cut her hand. Complainant then wiped her hand on his light brown jacket. Defendant struck complainant on the head, causing her to fall down, and stabbed her in the back, abdomen, neck, and hands.

Thereafter, defendant forced complainant into the bathroom, locked the door, and while holding the knife, forced her to take off her clothes. Defendant ordered complainant to sit on the toilet and forced his penis into her mouth. He subsequently ordered her to lie facedown on the floor and unsuccessfully attempted to insert his penis into her vagina. He then ordered her to lie on her back, and he had sexual intercourse with her. Defendant threatened to kill complainant if she did not keep quiet. He subsequently got dressed and threatened to kill her if she left the room or called the police.

Defendant left the restroom, and complainant locked the door and remained inside until she heard the elevator arrive. When she walked out into the hallway, defendant yelled at her to go back or he would kill her. She went back into the restroom, locked the door, and waited until she heard the elevator open and close again. She then left the restroom, took the elevator to the lobby, and told a security guard that she had been raped by a black man. The security guard called the police, and when they arrived, complainant gave them a description of her assailant. The officers then took complainant to

Henrotin Hospital for examination and treatment. They subsequently took her to the police station.

Defendant was arrested in a tavern at approximately 1 a.m. on the following morning. During the pat-down search incident to defendant's arrest, Chicago police detective McMurdo recovered from defendant's jacket pocket a serrated knife with stains on the handle and blade. The detective also recovered a pair of gloves, a beige jacket, and a white shirt with a plaid design. The jacket and shirt both had brownish-red stains on them.

At approximately 2 p.m. on December 28, 1985, complainant viewed a lineup and identified defendant as her assailant. Defendant was advised of his constitutional rights, interviewed by Chicago police sergeant Barnes and Assistant State's Attorney Levy, and gave a statement. Defendant then signed the written summary of his statement prepared by Levy.

Defendant told Barnes and Levy that at about 6:30 p.m. on December 27, 1985, he was in a building near Wacker Drive and Wabash Avenue looking for an attorney. The attorney was not there, and defendant took a bus to a liquor store on Roosevelt and Wabash. There, he purchased from an unknown male, a coat, shirt, hat, and earmuffs for $5. It was dark, and defendant did not notice that there was blood on the jacket or shirt. He said that when he put the coat on, he found a steak knife in the pocket which he kept. Defendant stated that when the police originally stopped him, he had lied to them and told them he was eating a steak and spilled the juice on his shirt and jacket, and that was how the stains got there. He stated that the story he told the police earlier was a lie and that this statement was the truth.

The parties stipulated that complainant sustained multiple small puncture wounds by a knife on her left hand, on her chest, and on her back. A vaginal smear obtained from the complainant revealed the presence of spermatozoa, and extracts of fluid recovered from the floor of the washroom revealed human blood. Human blood was found on the knife, jacket, and shirt recovered from the defendant. The steak knife recovered from his pocket had a 4½-inch blade with a serrated edge.

Defendant testified on his own behalf that on December 27, 1985, he was unemployed, homeless, and receiving disability benefits because he suffered from dizziness and insomnia. During the three years between his arrest and trial, defendant received court-ordered psychiatric treatment because he initially had been found unfit to stand trial. Treating clinical psychologists and psychiatrists at the

Chester Mental Health Center determined that defendant suffered from atypical bipolar disorder and antisocial personality disorder.

Defendant testified further that on the evening of December 27, 1985, he went to the building at 100 North La Salle in Chicago. He said that he had business to conduct with an attorney in that building. Although he did not meet with the attorney, defendant stated that he did not leave the building until "something unusual happened." Defendant admitted that he got into "a lot of trouble" that evening in that building. He testified further that he was looking for a bathroom and was in the hallway when he got himself "into a lot of trouble." He stated that the complainant was the nice lady who attacked him.

After both sides rested, the trial court immediately entered a finding of guilty on all charges in the indictment. The court did not invite closing argument from either side, and neither counsel requested the opportunity to present a closing argument. The trial transcript indicates that the cause proceeded as follows:

"THE COURT: All right, there will be a finding of guilty on the form and specifications in the indictment.

Come up here.

I don't know what to do with him.

We all know where, that where he belongs is not out on the street.

I am contemplating the maximum just to get him off the streets and try to get him some treatment.

[DEFENSE COUNSEL]: Your Honor, the only thing I can say in Melvin's own behalf is in reviewing the psychiatric reports it shows that his life, he has been there approximately 45 times and sent to the hospital.

THE COURT: What I want to know is what if he is taken down and some day, maybe, I don't know what they can do. But they tell me he is sane.

[DEFENSE COUNSEL]: Judge, he has been found sane by several different psychiatrists.

THE COURT: Mr. Coleman, I am going to sentence you to thirty years on the basis that I just want you to go down for psychiatric treatment. I don't even think—

THE DEFENDANT: I don't need it.

THE COURT: I know you don't. I understand. But this poor lady.

It is going to have to be thirty years in the Illinois Department of Corrections.

* * *

Mr. Coleman, I want the mit to read that you are to go to whatever psychiatric unit.

What do we have down there, Menard?

[DEFENSE COUNSEL]: Menard, Judge.

THE COURT: I want you to go to Menard.

Make the mit to issue that he is to go directly to the Psychiatric Unit as quickly as possible so they can start treating him.

* * *

I have no alternative. I must put you off the street so there is some way that they can treat you.

Thirty years in the Illinois Department of Corrections."

The trial court denied defendant's subsequent motion for a new trial.

Defendant initially claims that the trial judge abused his discretion in sentencing him without first conducting a sentencing hearing. We agree.

■■ ■ Section 5—4—1 of the Unified Code of Corrections provides that the court shall conduct a hearing to impose sentence and shall consider the evidence received at trial; consider any presentence reports; consider evidence and information offered by the parties in aggravation and mitigation; hear argument as to sentencing alternatives; and afford the defendant the opportunity to make a statement in his own behalf. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1(a).) Section 5—4—1 also provides that when imposing a sentence for a felony, the trial judge shall specify on the record the particular evidence, information, factors in mitigation and aggravation, or other reasons that led to the sentencing determination. Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1(c).

The record in the instant case reveals that the trial judge did not conduct a sentencing hearing, but imposed sentence on defendant immediately after finding him guilty of the offenses charged in the indictment.

Nothing in the record indicates that the court considered the evidence received at trial or the presentence investigation report prior to sentencing defendant to concurrent terms of 30 years. Although the court did afford defendant the opportunity to make a statement on his own behalf, this opportunity was presented well after sentence had already been imposed. The court heard defense counsel's statement that psychiatric reports indicated defendant had received prior psychiatric treatment on approximately 45 different occasions but

heard no other argument from either party as to possible or appropriate sentences. The court heard no evidence in aggravation or mitigation, and defense counsel was not afforded an opportunity to present any evidence in mitigation.

The trial judge apparently did not consider and requested no information or argument from defense counsel as to alternative sentencing proposals and failed to state the reasons for the sentences imposed.

██ Immediately after finding defendant guilty and before any statements had been made on defendant's behalf, the trial judge specifically stated that he was "contemplating the maximum [sentence] just to get [defendant] off the streets and try to get him some treatment." This statement indicates that the trial judge had predetermined the defendant's sentences prior to considering any of the factors mandated in the sentencing statute. We believe that the trial court failed to comply with the requirements of the statute and that defendant is entitled to a new sentencing hearing.

We next consider whether defendant was deprived of the right to a fair trial because defense counsel was not given an opportunity to make or waive closing argument.

The record discloses that upon the close of defendant's case and the State's decision not to offer any rebuttal testimony, the trial judge began to announce his findings and continued without interruption or objection by either party.

██ It has been held that the right to closing argument can be waived (*Herring v. New York* (1975), 422 U.S. 853, 860, 45 L. Ed. 2d 593, 599, 95 S. Ct. 2550, 2554), and where the defendant has made no attempt to seek closing argument, it cannot be said that he was denied the opportunity to present a closing argument (*People v. Moczarney* (1978), 65 Ill. App. 3d 410, 417, 382 N.E.2d 544, 549). This is true especially where, as here, the evidence against defendant was overwhelming and it could not be said that a closing argument was necessary because the State's case was weak. See *Moczarney*, 65 Ill. App. 3d at 417, 382 N.E.2d at 549.

Consequently, we hold that defendant was not deprived of the right to present a closing argument where he never requested an opportunity to make such an argument and failed to object when the trial judge began to announce his findings.

We next address defendant's claim that the record does not support the convictions and sentences imposed. Defendant argues and the State concedes that the trial court erred in convicting and sentencing him on 12 counts of aggravated criminal sexual assault and

on one count of criminal sexual assault where the evidence established that he committed only three acts of penetration.

■ Criminal sexual assault is a lesser included offense of aggravated criminal sexual assault. Because the lesser included offense merges into the greater offense, defendant's conviction and sentence for criminal sexual assault are vacated. *People v. Hines* (1988), 165 Ill. App. 3d 289, 301, 518 N.E.2d 1362, 1369.

■ The State also agrees with defendant's contention that he should not have been found guilty of 12 counts of aggravated criminal sexual assault where the evidence established that he committed only three acts of penetration. The offense of criminal sexual assault is committed where an accused commits an act of sexual penetration by the use of force or threat of force. (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a).) Aggravated criminal sexual assault is committed where an accused commits criminal sexual assault and there existed during the commission of the offense an aggravating circumstance, including the use of a deadly weapon; the infliction of bodily harm; the threat or endangerment to the life of the victim; and the commission of the offense during the course of the commission or attempted commission of any other felony. Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(a)(1), (a)(2), (a)(3), (a)(4).

■ The evidence established that defendant committed three separate and distinct acts of sexual penetration upon the complainant by the use of force and while there existed aggravating factors. Consequently, defendant was properly convicted of and sentenced for three counts of aggravated criminal sexual assault. (*People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) The remaining nine convictions and sentences for aggravated criminal sexual assault are vacated.

■ The record reflects that the trial court also found defendant guilty of attempted murder and aggravated kidnapping but failed to impose sentences for these crimes. The State urges this court to remand the cause for imposition of sentences on these offenses. We hold that defendant's conviction for attempted murder, which was charged in the indictment as an aggravating factor to the crime of criminal sexual assault, is merged with one of the convictions of aggravated criminal sexual assault. The indictment did not, however, charge aggravated kidnapping as an aggravating factor to the crime of criminal sexual assault. Consequently, we remand the cause for imposition of a sentence on this offense. See *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540; *People v. Stanley* (1986), 146 Ill. App. 3d 912, 497 N.E.2d 503.

We have already determined that defendant is entitled to a new sentencing hearing. Thus, sentences for defendant's conviction of aggravated kidnapping and for his three convictions of aggravated criminal sexual assault will be imposed after the court has conducted this hearing in accordance with the mandates of the sentencing statute.

Finally, we consider defendant's assertion that he was deprived of the right to due process where the trial judge considered his presentence investigation report prior to adjudicating the case on the merits.

■■ We find no evidence in the record establishing that the trial court considered the presentence investigation report prior to deciding the case on the merits after hearing all of the evidence presented by both parties.

In a bench trial it is presumed that the trial judge has considered only competent evidence in reaching a decision. (*People v. Gilbert* (1977), 68 Ill. 2d 252, 369 N.E.2d 849.) The trial court did not refer to the presentence investigation report during trial or when he found defendant guilty, and defendant has pointed to no evidence in the record which would rebut the presumption that the court considered only competent evidence. Consequently, we do not believe defendant was deprived of the right to due process on this basis.

For the foregoing reasons, defendant's conviction and sentence for criminal sexual assault is vacated, and 9 of defendant's 12 convictions and sentences for aggravated criminal sexual assault are vacated. The remaining three convictions for aggravated criminal sexual assault are affirmed. The cause is remanded for a new sentencing hearing and for imposition of sentences on defendant's convictions for aggravated criminal sexual assault and for aggravated kidnapping.

Affirmed in part; reversed in part and remanded.

RAKOWSKI, P.J., and McNAMARA, J., concur.