**UNITED STATES of America ex rel. Joseph W. HAMPTON, Petitioner,**

v.

**George E. DETELLA, Warden, State-ville Correctional Center, and James Ryan, Attorney General of the State of Illinois, Respondents.**

No. 97 C 7885.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 5, 1998.

David E. Camic, Wilson & Camic Ltd., Aurora, IL, Marvin Ira Bloom, Chicago, IL, for petitioner.

William Lloyd Browers, Illinois Attorney General's Office, Chicago, IL, Respondents.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Joseph Hampton (Hampton), a prisoner at Stateville Correctional Center, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, we defer ruling on the petition.

## BACKGROUND

Hampton, along with a co-defendant, Jayme P. Sebers, was charged in the Circuit Court of Kendall County, Illinois, with multiple counts of attempted murder, armed robbery, and aggravated battery. The two waived their rights to a jury trial and on August 20, 1991, pleaded guilty to the charges and were sentenced. They both filed motions to withdraw their guilty pleas and to vacate the convictions, which were denied. In separate appeals, the Illinois Appellate Court reversed the orders denying the motions to withdraw the guilty pleas and ordered that the defendants be allowed to enter new pleas. *See People v. Hampton,* 249 Ill.App.3d 873, 189 Ill.Dec. 344, 620 N.E.2d 3 (1993).

On remand, both defendants pled not guilty and requested that the court allow them to reinstate their jury demands, which the court denied. The case proceeded to bench trial and both were found guilty. Hampton was sentenced to consecutive prison terms of 30 years for each count of attempted murder and for the armed robbery count, for a total of 90 years imprisonment, with a concurrent term of 10 years for aggravated battery.

Hampton appealed, raising the following issues: (1) he was denied his right to defend against the charges when the trial judge declared him guilty without affording him an opportunity to present closing argument; (2) the court erred when it denied him the opportunity to impeach a state witness and admitted irrelevant and incompetent evidence; (3) the court erred in determining that his sentence for armed robbery must be served consecutive to his sentences for attempted murder; and (4) the court abused its discretion in sentencing him to consecutive extended-term sentences totaling 90 years imprisonment. On April 1, 1996, the Illinois Appellate Court denied Hampton's appeal. Hampton filed a timely leave for appeal to the Illinois Supreme Court, which was denied on October 2, 1996. He then filed a petition for *writ of certiorari* to the United States Supreme Court, which was denied on March 31, 1997.

Co-defendant Sebers filed a separate appeal and on March 3, 1997, the appellate court reversed the trial court's denial of Sebers' request for a jury trial, and remanded the case to the pleading stage. On June 4, 1997, the Illinois Supreme Court denied the state's petition for leave to appeal the decision with regard to Sebers.

On November 12, 1997, Hampton filed the instant petition for writ of habeas corpus, raising two claims: (1) he was denied due process of law and his Sixth Amendment right to counsel when the state court declared him guilty without allowing him to present a closing argument; and (2) he was denied his equal protection rights when the appellate court reversed Sebers' conviction on the basis that the trial court had erred in denying his request for a jury trial.

## DISCUSSION

On the merits, Hampton's petition is governed by the recent amendments to 28 U.S.C. § 2254. Section 2254(d) governs the consideration of any claim adjudicated by a state court on its merits. *Lindh v. Murphy,* 96 F.3d 856, 868–71 (7th Cir. 1996), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Under § 2254(d)(1), habeas relief may be awarded only if the state court's adjudication of the claim "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law," as determined by the United States Supreme Court. Under subsection (d)(2), habeas relief is only possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court. The "unreasonable application" exception of § 2254(d)(1) applies to mixed question of law and fact, and thus where the state court offers "a responsible, thoughtful answer" after "a full opportunity to litigate" the question, a federal court on habeas review must accept that answer as "adequate to support the judgment." *Id.* at 871.

However, "[b]efore a federal court may review the merits of a claim raised by a state prisoner in a habeas petition, the petitioner must fulfill the procedural requirements set by state law for seeking judicial review in the state courts." *Lemons v. O'Sullivan,* 54 F.3d 357, 360 (7th Cir.1995), *cert. denied,* 516 U.S. 993, 116 S.Ct. 528, 133 L.Ed.2d 434 (1995). Forfeiture of a claim under § 2254 "is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan v. McBride,* 74 F.3d 144, 146 (7th Cir.1996). Procedural default may occur in one of two ways. First, the petitioner may fail to raise fairly and properly an issue on direct appeal or post-conviction review. *See Momient–El v. DeTella,* 118 F.3d 535, 538–39 (7th Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 448, 139 L.Ed.2d 384 (1997). Alternatively, procedural default occurs when the state court clearly relies on a state procedural bar as an independent basis for its denial of relief. *See Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Boerckel v. O'Sullivan,* 135 F.3d 1194, 1197 (7th Cir.1998). A petitioner may raise a procedurally defaulted claim in a habeas proceeding only

by showing good cause for the default and actual prejudice stemming therefrom. *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Hampton's first claim is that the state court's refusal to afford him the right to present closing argument was contrary to, or an unreasonable application of, his clearly established Sixth Amendment right to counsel. *See Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). Hampton's lawyer did not object at the time the trial court began to make findings nor did he request to make closing arguments. On appeal, the court found that Hampton had waived his right to present closing argument by this failure to object. *People v. Hampton,* 281 Ill. App.3d 1140, 233 Ill.Dec. 775, 701 N.E.2d 840 (1996), (citing *People v. Coleman,* 212 Ill.App.3d 997, 157 Ill.Dec. 16, 571 N.E.2d 1035, 1039 (1991)). Because the appellate court clearly relied on the failure to object to deny Hampton's claim, the state argues that he is procedurally barred from raising that claim on habeas.

Normally, a defendant's failure to object at trial constitutes a waiver of the underlying issue that acts as a procedural bar on habeas review so long as the state "regularly or consistently applie[s]" a contemporaneous objection rule to bar consideration of errors on direct appeal. *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988). However, we are not dealing here with the straightforward application of the type of state procedural rule that would support a finding of default. Instead, Hampton asks this court to find that the state court's finding of waiver in itself constituted a violation of federal law. It is well established that the issue of whether a defendant knowingly waives his right to present a closing statement by failing to object is an issue of constitutional magnitude. *See United States v. Spears,* 671 F.2d 991 (7th Cir.1982). Accordingly, we find that Hampton has not procedurally defaulted

his Sixth Amendment claim that he was denied the right to summation.

■ We therefore turn to an evaluation of Hampton's Sixth Amendment claim on the merits. The United States Supreme Court in *Herring*, 422 U.S. at 856–65, 95 S.Ct. 2550, held that it is *per se* reversible error in any criminal trial, whether to a jury or to a judge, for the court to deny the defendant the opportunity to present a closing argument. The court reasoned that the opportunity to make closing argument is an integral part of the Sixth Amendment right to counsel. However, the *Herring* court endorsed the proposition that the right to present a summation may be waived by quoting with approval the statement of the Maryland Court of Appeals in a previous case:

> The Constitutional Right of a defendant to be heard through counsel necessarily includes the right to have his counsel make a proper argument on the evidence and the applicable law in his favor, however simple, clear, unimpeached, and conclusive the evidence may seem, unless he has waived his right to such argument. . . .

*Id.* at 860, 95 S.Ct. 2550 (*quoting Yopps v. State*, 228 Md. 204, 178 A.2d 879, 881 (1962)). Generally, before a waiver of the right to present closing argument will be found, the record must demonstrate its "intentional relinquishment or abandonment." *Spears*, 671 F.2d at 993 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

■ Although acknowledging the right to summation could be theoretically waived, the *Herring* court did not discuss the factors sufficient to show waiver, and this issue has continued to vex courts that have dealt with this issue. While it is clear that a defendant may waive his right to closing argument where his lawyer explicitly declines the court's offer to make such argument, *see, e.g., Commonwealth v. McCray*, 212 Pa.Super. 457, 243 A.2d 453 (1968), where the issue of summation is not raised at the trial level, courts have split

over whether to infer a waiver of the right of summation on the basis of defense counsel's silence. *See Spears*, 671 F.2d at 993–994 (discussing conflicting state court cases regarding whether defendant can waive right to summation by mere silence). Thus, some courts have inferred a waiver from defense counsel's failure to object. *See United States v. Stenzel*, 49 F.3d 658, 662 (10th Cir.1995); *People v. Riley*, 219 Ill.App.3d 482, 162 Ill.Dec. 194, 579 N.E.2d 1008 (1991); *State v. Rojewski*, 202 Neb. 34, 272 N.W.2d 920 (1979); *Covington v. State*, 282 Md. 540, 386 A.2d 336 (1978); *Lee v. State*, 175 Ind.App. 17, 369 N.E.2d 1083 (1977) (Staton, P.J., concurring); *State v. Hale*, 472 S.W.2d 365 (Mo.1971), while others have been more reluctant, *see United States v. King*, 650 F.2d 534 (4th Cir.1981).

In its only pronouncement on this issue, the Seventh Circuit, *in dicta*, rejected the idea that a defendant could waive the right to summation where he did not have a meaningful opportunity to object. *Spears*, 671 F.2d at 994. On the merits, the court found that the defendant had waived his right since he remained silent despite the fact that he had three weeks before the verdict was announced to request summation. *Id.* at 995. However, the court went on to state that "where the announcement of the verdict comes on the heels of the close of evidence, it seems unrealistic to suggest that the failure to request constitutes a waiver. Clearly, under such circumstances, it could not be said that there was 'an intentional relinquishment or abandonment of a known right or privilege.' " *Id.* at 994 (citing *Johnson*, 304 U.S. at 464, 58 S.Ct. 1019).

The Fifth Circuit in *United States v. Martinez*, 974 F.2d 589 (1992), agreed. In that case, the court concluded that "the critical factor in deciding whether the silence of counsel constitutes a waiver is whether there was a meaningful opportunity for counsel to request argument or to object, considering all the attendant cir-

cumstances." *Id.* at 591–92. The court went on to say that when "the court announces that it will not hear oral argument a waiver can only be inferred from counsel's silence if, after the close of the evidence, counsel has had time to contemplate making the argument, has an opportunity to object and does not, and makes no post-trial effort to assert the right at a time when the error might be cured." *Id.* at 592. The court held that the defendant had made a valid waiver under the facts of that case, where the court did not announce its ruling immediately after the close of evidence, instead calling for a recess during which time defense counsel had an opportunity to collect his thoughts. *Id.*

We tend to agree with *Spears* and *Martinez* that a defendant cannot waive his right to present closing argument without a meaningful opportunity to request argument or object. The Illinois Court of Appeals found that since *Herring* permitted waiver of the right to present closing statement, Hampton did not suffer any constitutional violation in this case where defense counsel did not seek to make closing argument, or object when the judge began to make his findings. *Hampton,* 281 Ill.App.3d 1140, 233 Ill.Dec. 775, 701 N.E.2d 840. However, *Spears* specifically states that where the trial court makes its findings immediately following the close of evidence, the fact that defense counsel does not request summation or object does not constitute a valid waiver. 671 F.2d at 994. In light of this, it is arguable that if Hampton was not given time to object before the trial court made its findings, the state appellate court's decision to the contrary would have involved an unreasonable application of *Herring,* entitling Hampton to habeas relief under § 2254(d)(1).

However, even if Hampton could succeed in showing that he did not have time to request summation or object before the court made its findings of fact, we are troubled by the idea of granting him habeas relief on this ground. After all, habeas relief is limited to cases in which the petitioner can show that he is in custody on the basis of a state court decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Here, by *Herring,* the Supreme Court has clearly established that a criminal defendant is entitled to present closing argument. However, we are not sure if the precise issue we are dealing with here—that is, whether a criminal defendant has *waived* his right to present closing argument—is also clearly established Supreme Court law. While we subscribe to the view that a district court evaluating a habeas petition may look to lower federal court interpretations of clearly established Supreme Court rules, we are not sure in this case if the issue of waiver is merely a "gloss" on the right to present closing argument, or a separate issue altogether. In the latter case, even if Hampton did not waive his right, it would seem that he would not be entitled to habeas relief since it could not be said that he was in custody in violation of clearly established Supreme Court law. Accordingly, we request that the parties submit arguments regarding whether the issue of waiver of the right to summation is clearly established Supreme Court law.

Each party proceeds to make arguments on the assumption that the waiver issue is dispositive. We will evaluate these arguments with the above caveat in mind. In support of his position, Hampton asserts (without pointing to any specific portions of the record) that the trial judge "immediately declared [him] guilty after ruling on a motion without affording counsel the opportunity . . . to request or to present closing argument" (Pet. Resp. at 2). The state apparently concedes this fact, as it makes no attempt to refute it. Instead, the state takes a different route and argues (almost as an afterthought) in its surreply that "there is strong reason to believe that Petitioner's waiver of closing

argument was more than counsel merely standing mute rather than interrupting the judge ..." (Surreply at 2–3). The state goes on to provide what is apparently a quote from the trial court's denial of Hampton's post-trial motion for a new trial. In it the court states as follows:

> As to Paragraph 5, notwithstanding defense counsel's failure to ask for an opening statement, or defense counsel's failure to request a closing statement or objecting to the Court at any time and further notwithstanding defense counsel's statements to the Court before attorney Frank Brewe and the Court Administrative Assistant, that they had no intention to ever make closing arguments nor were they even going to raise that as an issue in this case ...

(Surreply at 3) (emphasis added in surreply). On the basis of this citation, the state concludes that "an off-the-record discussion had occurred in which counsel had explicitly waived the right to present closing argument" (Surreply at 3)

Of course, if there was record evidence that Hampton's counsel explicitly waived his right to present a closing statement, that would dispose of the case. *See Spears* at 993. However, there is insufficient information before this court at this time to make such a finding. The state has not even attached in its appendix a copy of the record verifying that the trial court did in fact make the statement regarding waiver that the state describes in its surreply. Instead, it provides an apparent quote from the record taken from an earlier state court brief. At this point, we are reluctant to reject Hampton's Sixth Amendment claim on the state's currently unsubstantiated evidence of explicit waiver. We would be inclined to find waiver

should it be verified that the court made the above statement, since it would provide strong evidence of a direct and specific discussion between the trial court judge and defense counsel regarding the issue of waiver. This would be especially true if Hampton could make no showing to the contrary. Accordingly, we defer ruling on the merits of Hampton's Sixth Amendment claim and order both parties to submit a copy of the record, indicating those portions that support their arguments regarding waiver.

Hampton's second claim is that he was denied equal protection of the law when his co-defendant was granted a new trial on the basis that the trial court erred in denying his request for a jury. The state argues that Hampton has procedurally defaulted his equal protection claim since he failed to raise the issue at the state court level. *See Momient–El,* 118 F.3d at 538–39. Hampton does not deny that he failed to raise either the equal protection claim or the underlying jury waiver issue to the state court. Instead, he argues that he should be excused from his procedural default since he was unable to present the jury waiver claim in state court because it was contrary to existing law as expressed in *People v. Shuman,* 226 Ill.App.3d 1065, 168 Ill.Dec. 777, 590 N.E.2d 99 (1992), *appeal denied,* 146 Ill.2d 647, 176 Ill.Dec. 817, 602 N.E.2d 471 (1992).[1] Additionally, Hampton contends that it was only after the Illinois Court of Appeals ruled in *People v. Sebers,* 286 Ill.App.3d 1136, No. 2–95–0128 (Ill.App.2d Dist.1997), contrary to *Shuman,* that co-defendant Sebers was entitled to a new trial that Hampton's equal protection claim arose. This, he argues, constitutes cause excusing the default.

---

1. Hampton also asserts that *People v. Hall,* 114 Ill.2d 376, 102 Ill.Dec. 322, 499 N.E.2d 1335 (1986) prevented him from being able to make his jury waiver claim on appeal. However, that case, which dealt with the totally distinct question of whether a defendant had knowingly and intelligently waived his right to a jury at sentencing. *Id.* 499 N.E.2d at

1349. That case did not deal with the issue Hampton is concerned with here, namely, the effect of a remand order on a defendant's previous decision to waive his right to a jury. In fact, the Hall court affirmed the lower court's decision and did not issue a remand order. *Id.* 499 N.E.2d at 1354.

■ "[A] showing that the factual or legal basis of a claim was not reasonably available to counsel" may be cause for bringing an otherwise procedurally defaulted habeas corpus petition. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the Supreme Court held that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim." *See Salberg*, 969 F.2d 379, 382 (7 th Cir.1992) (interpreting a constitutional claim as not "reasonably available" if the decision establishing that claim "(1) expressly overruled existing Supreme Court precedent, (2) overturned a long-standing and widespread practice to which a 'near unanimous' body of lower court authority had adhered or (3) disapproves a practice that the Supreme Court had arguably sanctioned in the past," citing *Reed*, 468 U.S. at 17, 104 S.Ct. 2901). However, in light of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the validity of *Reed* is questionable. *See Prihoda v. McCaughtry*, 910 F.2d 1379, 1386 (7th Cir. 1990). *But see Gacy v. Welborn*, 994 F.2d 305, 311 (7th Cir.) (en banc) ("Any claim sufficiently novel that it was unavailable during the state proceedings must be a 'new rule' under *Teague*."), *cert. denied*, 510 U.S. 899, 114 S.Ct. 269, 126 L.Ed.2d 220 (1993).

■ However, even assuming that *Reed* survives *Teague*, Hampton is not able to show cause under that standard here. The new rule that the *Sebers* court allegedly established is a state law rule, not a constitutional one. Specifically, Hampton argues that under *Shuman*, the law was that a remand placed the defendant in the same position that he would have been had the trial court error not

occurred. Thus, where a defendant did not voluntarily plead guilty, a remand put him back to the pleading stage. *Id.* 590 N.E.2d at 101. The alleged change in the law created by *Sebers* is that now a remand places a defendant back to a position prior to the error. The appellate court remanded *Sebers*—where the issue was the validity of the defendant's plea—back to the jury waiver stage, which was, Hampton contends, before the pleading stage. The *Sebers* court clearly did not—indeed, it could not—establish a new constitutional rule of the type that would have excused Hampton's failure to raise the issue on state court appeal. Instead, the issue is definitely one of state law—defining what is the procedural effect of an appellate court's remand—that simply cannot provide the basis for a finding of cause. *See Murray*, 477 U.S. at 488, 106 S.Ct. 2639.[2]

Hampton attempts to bootstrap the state law issue into one of constitutional import by arguing that the *Sebers* court's "intentional, arbitrary and capricious interpretation of state law" constituted an equal protection violation. He argues that he should be excused of any procedural default because he could not have brought his equal protection claim until after the *Sebers* court made its unconstitutional decision. He then asks this court to grant his habeas petition on the merits, since the *Sebers* court created an arbitrary classification between similarly situated persons which violates the equal protection clause.

■ It is true that an equal protection violation can occur when different legal standards are arbitrarily applied to similarly situated defendants. *See Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1386 (7th Cir.1994) (citing *Dobbert v. Florida*, 432 U.S. 282, 301, 97 S.Ct. 2290,

---

2. Of course, Hampton's default could still be excused if he could show that it would otherwise constitute a fundamental miscarriage of justice. A fundamental miscarriage of justice is narrowly construed and is equivalent to actual, as opposed to legal, innocence. *See*

*Saywer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). However, Hampton does not claim, and we do not find, that his default should be excused because he is "actually innocent" of the crimes for which he was convicted.

53 L.Ed.2d 344 (1977)), *cert. denied,* 514 U.S. 1037, 115 S.Ct. 1404, 131 L.Ed.2d 290 (1995). However, even if we assume that Hampton could get around the procedural bar (which, as discussed above, we think he cannot), we think his equal protection argument lacks merit for several reasons.

■ First, and most importantly, Hampton's equal protection claim does not fit into the narrow categories for relief prescribed by § 2254(d). Under that provision, he must show that he is in custody "pursuant to the judgment of a State court" that "was contrary to, or involved an unreasonable interpretation of, clearly established Federal law." § 2254(d)(1). Instead, Hampton attempts to argue that the Illinois Appellate Court's decision in *Sebers,* a case to which he was not a party, violated his equal protection rights. Hampton cannot obtain such relief on habeas review by attacking the decision in a case to which he was not a party, since he cannot say he is in custody pursuant to that state court's judgment.[3]

We note that Hampton's argument is truly curious in this regard. Hampton has asked this court to find that he was prevented from raising his claim on appeal (thus excusing his procedural default) because *Shuman* correctly stated that he was not entitled to a remand that would have allowed him to reinstate a jury demand. He then asks that we grant habeas because the decision in *Sebers* violated his equal protection right by erroneously interpreting *Shuman.* He apparently makes this request precisely because he wants to benefit from the decision in *Sebers*—the very one that he has argued all along was incorrectly decided. Of course, Hampton has to make this contradictory argument in order to both try to avoid procedural default and to prevail on the merits. However, in so doing, he crafts an equal protection argument that is not eligi-

ble for habeas relief since it attacks a state court decision to which he was not a party.

■ Moreover, we think the substance of Hampton's equal protection claim is without merit. This is because we cannot say that the *Sebers* court's interpretation of *Shuman* was arbitrary or capricious. In *Shuman,* the appellate court remanded the case where the defendant had not made a voluntary guilty plea. *Id.* 590 N.E.2d at 101. The court stated that remanding the case was the better course "because it places the defendant in the position he would have been in if the errors had not occurred." In *Sebers,* the court found that Shuman did not set forth any definitive statement as to where cases should be returned on remand, *Sebers,* No. 2–95–0128, at 6, and that the overriding principle was that the trial court follow the appellate court's mandate, which, in that case, dictated that the defendant be allowed to reenter a jury demand or waiver. *Id.* at 5. We cannot say that the *Sebers* court's interpretation of the remand rule constituted an arbitrary or capricious interpretation of the general standard in *Shuman.*

■ At best, the *Sebers* court erred in applying *Shuman.* However, it is well established that errors of state law are not a basis for granting federal habeas corpus relief. *Williams v. Chrans,* 945 F.2d 926, 956 (7th Cir.1991), *cert. denied,* 505 U.S. 1208, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992). An allegedly incorrect application of state law does not become a basis for habeas corpus relief simply by recharacterizing it as an equal protection violation because some defendants have different law applied to them. *Bowser v. Boggs,* 20 F.3d 1060, 1065–66 (10th Cir.1994), *cert. denied,* 513 U.S. 926, 115 S.Ct. 313, 130 L.Ed.2d 275 (1994).

■ Moreover, as the state correctly points out, even if *Sebers* was an arbitrary

---

**3.** A petitioner can bring a habeas petition asserting claims that were not made during the state court proceedings when certain con-

ditions exist which are not present here. § 2254(e)(2).

application of state law, there can be no equal protection violation here because Hampton, who did not appeal his jury waiver claim, was not similarly situated to *Sebers*. The simple fact is that Hampton's lawyers failed to raise the jury waiver issue on appeal. This constitutes a fundamental difference between Hampton and Sebers. Hampton attempts to argue that he was similarly situated to Sebers in that they both pled guilty, had their guilty pleas vacated, were retried and found guilty. However, it was only before Sebers took his appeal that the two were similarly situated. It was after Sebers appealed, and thus placed himself in a different situation than Hampton, that the state law regarding remand was (arguably) applied differentially. Based on this, we cannot find that Hampton was similarly situated to Sebers.

In addition, contrary to Hampton's position, he was not prevented by the state from appealing the jury waiver issue; rather, he chose not to do so on the basis of his interpretation of the *Shuman* court's general statements regarding remand. That Sebers was treated differently resulted from his decision to pursue appeal based on a different reading of *Shuman*. Hampton cannot now seek to hold the state responsible for his attorney's reading of a rather open-ended statement in an appellate court opinion and his subsequent decision to forego appeal on that issue.

Of course, what Hampton has wanted to argue all along is that the state trial court erred in not allowing him to reinstate a jury demand when his case was initially remanded. He has attempted to dress this claim up as an equal protection claim because his attorneys failed to raise the issue on appeal, while Sebers did and was successful. However, Hampton is not entitled to habeas relief on the underlying jury waiver claim since the state court's refusal of his request to reinstate his jury demand was not contrary to, or an unreasonable application of, any clearly established Supreme Court law. Accordingly,

we reject Hampton's equal protection claim, and the underlying jury waiver claim.

## CONCLUSION

For the foregoing reasons, we defer ruling on petitioner's writ of habeas corpus until such time as the parties present to this court the requested arguments and information, which we ask them to do by September 1, 1998.