**In re the Matter of the ADOPTION OF J.L.S., a minor child.**

**No. 45A03–0811–CV–572.**

Court of Appeals of Indiana.

July 13, 2009.

---

Elizabeth G. Tegarden, Guardian Ad Litem, Valparaiso, IN, Attorney for Appellant.

## OPINION

VAIDIK, Judge.

### Case Summary

The Guardian Ad Litem ("GAL") for minor child J.L.S. appeals the juvenile court's denial of W.S. (maternal uncle) and A.S.'s (collectively, "the prospective parents") petition to adopt J.L.S. Specifically, the GAL argues that Indiana Code § 31-19-11-1(c) is unconstitutional as applied to J.L.S. because it provides that a court may not grant an adoption if a petitioner for adoption has been convicted of a host of felonies, including aggravated battery, without a determination of the child's best interests. Because an Illinois jury found W.S. guilty of aggravated battery, among other crimes, in 1996, the juvenile court denied the prospective parents' petition to adopt J.L.S. On appeal, we conclude that, according to W.S.'s criminal record before us, although the Illinois jury found W.S. guilty of aggravated battery, the Illinois trial court entered judgment of conviction against and sentenced W.S. for attempted murder. Because our legislature did not list attempted murder in Indiana Code § 31-19-11-1(c) as a felony that prohibits adoption, we reverse and remand this case for further proceedings.

### Facts and Procedural History

J.L.S. was born on March 31, 2008, in Florida. Before he was born, arrangements had been made for J.L.S.'s maternal uncle, W.S., and his wife, A.S., to adopt J.L.S. because his biological mother could not care for another child at home. Thus, within twenty-four hours of his birth, J.L.S.'s biological parents terminated their parental rights to him. The prospective parents took J.L.S. home to Indiana from the hospital.

On April 18, 2008, the prospective parents filed a petition to adopt J.L.S. in Lake Superior Court. At some point it came to the attention of the juvenile court that W.S. had a 1996 conviction for attempted murder in Illinois. Nevertheless, the adoption proceedings continued. The Villages prepared a Home Study for Service Adoption, and its report provides:

Despite the fact that [W.S.] spent time in prison, he appears to be the exception to the rule and rather than use the time to become a "better criminal," he used the time to complete his high school education, become totally detached from the Latin Kings, and recognize how choosing the wrong company can devastate a life. He has resolved to live a life that reflects his choice to become a responsible family man.

RECOMMENDATION: [The prospective parents] are fully bonded with this infant boy they brought home from the hospital. They never hesitated when asked to consider taking him into their lives and from the first moment considered his presence a blessing. They are a hard working, responsible couple who dearly love having a house full of children. All of the children are thriving and welcome [J.L.S.]. They each seem to take i[n] stride that soon another baby boy [1] will be added to the household as well. This is a couple who appears to be "settled" and content in

1. A.S. was pregnant at the time.

their situation. They are earnest, hard-working, and steeped in their Catholic faith. They would like to own a home one day, and recognize the importance of advanced education. Therefore, it is without hesitation this therapist/writer is able to recommend to the court that this family be allowed to adopt [J.L.S.] and raise him along with the rest of their cheerful brood.

Appellant's App. p. 49–50. A hearing was held before a referee in Lake Superior Court on August 5, 2008. At the hearing, the referee delved into W.S.'s criminal history. W.S. said that in 1994 he was charged with attempted murder in Illinois and was convicted in 1996. Tr. p. 8–9. He was sentenced to twenty years but only served nine years and two months. *Id.* at 9. The referee then explained that before she could grant the adoption, she would have to see the records from W.S.'s conviction in Illinois because she "just want[s] to see exactly what he's charged with because there are several felonies in Indiana that preclude you from adoption. Attempted Murder is not one of them. I just want to make sure that is the actual charge and conviction." *Id.* at 12. As such, the court took the matter under advisement pending "receipt of those criminal history records." *Id.* In the meantime, because everything else was in order, the trial court awarded the prospective parents temporary custody of J.L.S.

Another hearing was held on October 22, 2008. Before this hearing, however, the referee appointed a GAL for J.L.S. because the referee had apparently learned that W.S. had been charged with and found guilty of aggravated battery along with attempted murder. The GAL prepared a report for use at the October 22 hearing. The referee started off the hearing as follows:

Last time we were here, just for a little bit of history, we had an adoption hearing. We found out dad did have a criminal record, so I asked for counsel to provide me with a copy of that, which he did. *It appears as though dad was convicted of attempted murder as well as a few counts of aggravated battery,* and Indiana law precludes adoption from some people convicted of certain felonies, and that's why I appointed a GAL to look into the matter further so that we can make the most informed decision and also the best decision for [J.L.S.]. So the [GAL] is here representing the best interests of [J.L.S.], and they've provided the Court, and I'm assuming Mr. Ryan [prospective parents' attorney], with a wonderful [GAL] report, which I've had a chance to read and I'm sure counsel has as well.

*Id.* at 21 (emphasis added). The GAL then reported to the court:

I would just like to reiterate that [J.L.S.] does have a wonderful loving home with the [prospective parents]. I feel as though [W.S.] is a completely rehabilitated citizen despite his criminal record. The interaction between the child and the parents, you would not know that he was not biologically theirs. They are willing and able to provide him with everything that they provide their biological children with. I feel as though that the statute that applies to this case and to his criminal conviction doesn't afford [W.S.] his due process rights if it were to bar him from being an adoptive parent, and I think that nothing less than some type of guardianship for [J.L.S.] by the [prospective parents] is something that he should have.

*Id.* at 22–23. The GAL then clarified that both J.L.S.'s and W.S.'s procedural and substantive due process rights were being violated. The prospective parents' attor-

ney, Attorney Ryan, then addressed the court, agreeing with the GAL's report that the court had discretion in granting an adoption if the petitioner had been convicted of one of the enumerated felonies. The referee then concluded:

> I do not agree with the GAL report in that I believe the statute is very clear on its face and it precludes me from granting ... an adoption if the petitioner is convicted of aggravated battery. So I'm going to have to deny the adoption on that portion of the code.
>
> I encourage you to appeal the decision on the basis that the GAL has raised. Fortunately, the adoption code gives us some leniency about custody, and I do think it's in the best interest that [J.L.S.] be raised by the two of you, and hopefully the Court of Appeals will agree with the GAL and decide that an adoption can go forward and overrule my decision for the two of you.
>
> In the interim, though, the adoption code does allow me to provide custody to whomever I see fit, and what I'm going to do is award the two of you custody for the next 60 days, and then ask that Attorney Ryan petition the Court for guardianship of the child under a guardianship petition if the petitioners wish to have guardianship of the child.

*Id.* at 25–26. At this point, Attorney Ryan appeared to be baffled by the referee's ruling because he felt confident, based on the GAL's report, that the referee would grant the adoption. Attorney Ryan indicated that he did not understand the referee's ruling. The referee then attempted to clarify her ruling:

> [U]nder the dispositional portion of the code, 31–19–11–1(c), it lists a number of felonies that preclude the Court from granting an adoption. The Court is prohibited ... it says, "the Court may not grant an adoption if a petitioner for

adoption has been convicted of any of the felonies described as follows:" And under ... number 8, Aggravated Battery, is unfortunately one of those. Attempted murder is not. Why that is, I don't know; that's something the legislature has created. But the language in the statute says the Court may not grant an adoption because of an aggravated battery conviction.

*Id.* at 27. Attorney Ryan, who admitted that he was "unduly optimistic," *id.* at 29, indicated that he would look into things and would probably file a petition for guardianship because the prospective parents were "definitely going to keep [J.L.S.]. I mean, there's no question about that." *Id.* at 28. The GAL now appeals on behalf of J.L.S.

## Discussion and Decision

The GAL, on behalf of J.L.S., contends that Indiana Code § 31–19–11–1(c) is unconstitutional as applied to J.L.S. because it provides that a court may not grant an adoption if a petitioner for adoption has been convicted of a host of felonies, including aggravated battery, without a determination of the child's best interests. Indiana Code § 31–19–11–1(c) provides:

> (c) A conviction of a felony or a misdemeanor related to the health and safety of a child by a petitioner for adoption is a permissible basis for the court to deny the petition for adoption. *In addition, the court may not grant an adoption if a petitioner for adoption has been convicted of any of the felonies described as follows:*
>
> (1) Murder (IC 35–42–1–1).
>
> (2) Causing suicide (IC 35–42–1–2).
>
> (3) Assisting suicide (IC 35–42–1–2.5).
>
> (4) Voluntary manslaughter (IC 35–42–1–3).
>
> (5) Reckless homicide (IC 35–42–1–5).

(6) Battery as a felony (IC 35–42–2–1).

(7) Domestic battery (IC 35–42–2–1.3).

*(8) Aggravated battery (IC 35–42–2–1.5).*

(9) Kidnapping (IC 35–42–3–2).

(10) Criminal confinement (IC 35–42–3–3).

(11) A felony sex offense under IC 35–42–4.

(12) Carjacking (IC 35–42–5–2).

(13) Arson (IC 35–43–1–1).

(14) Incest (IC 35–46–1–3).

(15) Neglect of a dependent (IC 35–46–1–4(a)(1) and IC 35–46–1–4(a)(2)).

(16) Child selling (IC 35–46–1–4(d)).

(17) A felony involving a weapon under IC 35–47 or IC 35–47.5.

(18) A felony relating to controlled substances under IC 35–48–4.

(19) An offense relating to material or a performance that is harmful to minors or obscene under IC 35–49–3.

*(20) A felony that is substantially equivalent to a felony listed in subdivisions (1) through (19) for which the conviction was entered in another state.*

However, the court is not prohibited from granting an adoption based upon a felony conviction under subdivision (6), (12), (13), (17), or (18), or its equivalent under subdivision (20), if the offense was not committed within the immediately preceding five (5) year period.

(Emphases added). Thus, the statute makes clear that if a petitioner has been convicted of one of the enumerated felonies, then the court is prohibited from granting the adoption. The GAL argues that this violates J.L.S.'s substantive due process rights. Specifically, the GAL asserts that, because Indiana Code § 31–19–11–1(c) imposes an irrebuttable presumption that all individuals convicted of the enumerated felonies are unfit to adopt, it denies J.L.S. his constitutionally-protected right to familial integrity by robbing him of an individualized determination of his best interests. The GAL directs our attention to cases from other states in which their adoption statutes were found to be unconstitutional for a similar reason. *See In re Adoption of Corey*, 184 Misc.2d 437, 707 N.Y.S.2d 767 (N.Y.Fam.Ct.1999).

Despite mounting this constitutional challenge, the GAL includes a footnote that she has some "nagging questions" about the nature of W.S.'s conviction(s). Appellant's Br. p. 11 n. 5. The GAL writes,

Although the jury found him guilty of attempted murder and multiple counts of aggravated battery, it would appear that the lesser included offenses were merged with the attempted murder count at sentencing. The Appellant continues to seek clarification of the exact conviction from the Illinois appellate court, but cannot help opine that should the "conviction" prove to be … for attempted murder, and the guilty verdicts for aggravated battery be but jury findings that were merged into a[n] attempted murder conviction, could not [W.S.] stand[ ] under I.C. 31–19–11–1(c) as a person qualified and eligible to adopt?

*Id.* Although the GAL does not cite to any specific pages from W.S.'s criminal history records, this has prompted us to look deeper into the matter.

W.S.'s multipage Certified Statement of Conviction/Disposition included in the GAL's Appendix reflects that in November 1994, W.S. was charged with the following six counts:

1. (art) murder/intent to kill/inj

2. agg battery w/firearm/per

3. armed vio/category I weap

4. agg battery/great bodily

5.  agg battery/great bodily

6.  agg battery/public place

Appellant's App. p. 63 (capitalization omitted). Following W.S.'s 1996 jury trial, the following verdicts were entered:

| | |
|---|---|
| Count I | Guilty |
| Count II | Guilty |
| Count III | Guilty |
| Count IV | No order |
| Count V | Guilty |
| Count VI | No order |

*Id.* at 67–68. On May 28, 1996, the trial court sentenced W.S. to eighteen years. Importantly, however, it appears that he was only sentenced on Count I, and Count V was merged into Count I. All the entries pertaining to W.S.'s sentence follow:

| | | |
|---|---|---|
| 05/28/96 | Def sentenced Illinois DOC 18 yrs | C001 |
| 05/28/96 | Lesser included offense merged into Ct 1 | C005 |
| 05/28/96 | Credit Defendant for time serv Credit 295 days | |

*Id.* at 68 (capitalization omitted). Notably, the entries do *not* reflect that judgment of conviction was entered or sentence was imposed for Counts II ("agg battery") or III ("armed vio"). As for Count V, which was for aggravated battery, the trial court "merged" that into attempted murder. Pursuant to Illinois law, if a lesser included offense merges into a greater offense, then the offense is vacated. *See Illinois v. Coleman,* 212 Ill.App.3d 997, 157 Ill.Dec. 16, 571 N.E.2d 1035, 1040 (1991); *see also Illinois v. Artis,* 232 Ill.2d 156, 327 Ill.Dec. 556, 902 N.E.2d 677, 683 (2009) (upholding one-act, one-crime doctrine: "If the defendant's conduct is based on more than one physical act, a court must then determine whether any of the offenses are lesser-included offenses. If they are, then multiple convictions are improper.").

At the adoption hearing, the referee stated that W.S. had been "convicted" of a few counts of aggravated battery. It is true that the jury found W.S. guilty of two counts of aggravated battery (Counts II and V). However, W.S.'s Certified Statement of Conviction/Disposition does not show that judgment of conviction was entered or sentence was imposed for Count II, and Count V was merged into Count I, meaning that Count V was vacated. "A jury verdict does not equal a judgment of conviction." *Illinois v. Cruz,* 196 Ill. App.3d 1047, 143 Ill.Dec. 663, 554 N.E.2d 598, 601 (1990); *see also* 720 Ill. Comp. Stat. 5/2–5 (" 'Conviction' means a judgment of conviction or sentence *entered* upon a plea of guilty or upon a verdict or finding of guilty of an offense ....") (emphasis added).[2] In the absence of a judgment formally entered or sentence imposed, there is no "conviction." *Cruz,* 143 Ill.Dec. 663, 554 N.E.2d at 601. Because the record shows that there were no judgments of conviction entered against W.S. except for attempted murder and he was only sentenced for that charge, he was only "convicted" of attempted murder.

This then brings us full circle. Although Indiana Code § 31–19–11–1(c) lists several felonies that prohibit a court from granting an adoption, attempted murder is not one of them. While this appears to be an oversight by our legislature in light of the fact that felony battery and aggravated battery are listed, it is not the role of the judiciary to rewrite a statute. Because the crime of attempted murder does not appear to impede the prospective parents' adoption petition as the law now stands, we reverse and remand this case to determine whether adoption is *still* in the best interests of J.L.S. and whether the prospective parents are of sufficient ability to rear the child and furnish suitable support

---

**2.** The same is true under Indiana law. *See* Ind.Code § 35–38–1–1(a) ("Except as provided in section 1.5 of this chapter, after a verdict, finding, or plea of guilty, if a new trial is not granted, the court shall *enter* a judgment of conviction.") (emphasis added).

and education pursuant to Indiana Code § 31–19–11–1(a)(1) and (2).

Reversed and remanded.

NAJAM, J., and FRIEDLANDER, J., concur.