THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOANN ROBINSON, Defendant-Appellant.

First District (6th Division)   No. 1—88—3162

Opinion filed November 8, 1991.

Randolph N. Stone, Public Defender, of Chicago (Frank Madea, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Guy L. Miller IV, and Catherine A. Hufford, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a bench trial, defendant, Joann Robinson, was found guilty of aggravated criminal sexual assault and sentenced to 20 years' imprisonment. Defendant appeals, contending that she was deprived of her right to due process because the State and defense counsel stipulated that she was fit to stand trial; that the State's cross-examination of defendant constituted improper impeachment; and that the sentence was excessive.

The following facts were adduced at trial, which began on November 30, 1987. In November 1986, defendant was hospitalized after suffering a nervous breakdown. At that time, S.J., age four, and her three siblings were removed from defendant's custody by the Department of Children and Family Services (DCFS). Defendant was allowed several supervised visits with S.J. over the course of the next several months. On May 7, 1987, defendant was allowed her first unsupervised visit alone with S.J.

After extensive questioning by the trial judge, S.J. was qualified to testify concerning the events that occurred on May 7, 1987. S.J. testified that defendant picked her up at a center and took her to Tubman Shelter, where defendant was residing. Defendant took S.J. to her room, closed the door, and then "bad things happened." With the assistance of anatomically correct dolls, S.J. demonstrated that defendant made her perform vaginal and anal oral sex upon her. S.J. further testified that defendant touched her anal and vaginal areas with her hands, and that defendant also performed oral vaginal and anal sex upon her. Defendant threatened to beat S.J. with a stick if she told anyone about the incident.

S.J. described the incident to her foster mother later that evening and again the following morning. S.J. did not tell her foster mother about the incident immediately because she was afraid. S.J. stated that in addition to her mother, she had engaged in sex acts with her father, her siblings, and four cousins on other occasions prior to May 7, 1987.

Bessie Robinson, S.J.'s foster mother, testified that the day of the incident was the first unsupervised visit that S.J. had with defendant. According to Robinson, S.J. cried when she was told that defendant was going to take her out for the day because she was afraid that defendant would "make her do bad things." When defendant returned S.J. to the center after the visit, Robinson remarked that her eyes looked red, but S.J. explained that she had fallen asleep on the way home. Later that day, S.J. told Robinson that defendant made her do "bad stuff," and then described the oral sex acts she had engaged in that day. Robinson

took S.J. to the hospital after the occurrence for an examination. Robinson also stated that from the time S.J. came to her home in January 1987, the child spoke of sexual activity involving all of her family members.

Teri Frigo, a social worker at the hospital, testified that she interviewed S.J. on May 9, 1987, and learned that sexual abuse had taken place during defendant's unsupervised visit with S.J.

On April 11, 1988, approximately midway through defendant's trial, the Psychiatric Institute of the Circuit Court of Cook County advised the trial judge that defendant was unfit to stand trial because she was unable to cooperate with counsel in her own defense. The staff psychiatrist diagnosed defendant's condition as schizoaffective disorder and reported:

> "Today, the defendant is depressed and anxious. She has thoughts about harming herself. She was recently discharged from a psychiatric hospital. She exhibits a thought disorder in that there is a certain disorganization in her thinking. She has trouble sleeping and feels very restless. She is subject to Involuntary Admission. *** With hospital psychiatric treatment, she should be fit within one year."

Approximately one month later, on May 15, 1988, the staff psychiatrist at the Psychiatric Institute opined that defendant was no longer in need of in-patient psychiatric care and was fit to stand trial. In that report, it was noted that defendant had a mixed personality disorder with associated depressive features, but that no evidence was found of psychotic manifestation. Defendant denied suicidal or homicidal intent or ideation, and indicated motivation for involvement in an on-going psychiatric treatment program. The staff psychiatrist recommended that defendant remain involved in out-patient individual psychotherapy with supplemental medication.

On June 6, 1988, prior to resumption of trial, a restoration hearing was held during which time the following colloquy occurred:

> "THE COURT: One of the continuances, she was unfit for trial, both sides agree that if doctors were called, stipulation would include the fact that she became unfit and that later was reexamined, and with proper medication, is fit for trial.
>
> DEFENSE COUNSEL: I would so stipulate that [D]octor Gershin Kaplan of the Psychiatric Institute would so testify.
>
> THE STATE: As a report, dated May 13th, 1988, Joann Robinson is fit for trial with medication.
>
> THE COURT: Your [sic] taking your medication?
>
> DEFENDANT: Yes, I am.

THE COURT: The Court does find that the defendant on today's court date is fit for trial. Based on that stipulation, you may proceed."

Barbara Burnett, a social worker at the center, testified that S.J. spoke to her about an incident of sexual abuse with her mother and another woman. Georgia Shelby, a social worker for DCFS, provided similar testimony that S.J. verbally conveyed and demonstrated with a doll that she had been sexually abused by her mother.

Defendant's four cousins testified that they never abused S.J., nor were they aware of any allegations of sexual misconduct on the part of either of S.J.'s parents.

Defendant, age 32, testified that she had four children, ages 12, 9, 5 and 2. The father of three children, including S.J., was Enis Jackson, with whom she had lived for 10 years. Defendant stopped living with Jackson in 1986 because he abused her. After she left Jackson, defendant lived with her four children in a shelter for battered women.

Defendant further testified that she suffered a nervous breakdown in November 1986, and that she was hospitalized at the Osteopathic Hospital. Prior to her nervous breakdown, defendant learned that her oldest daughter had been sexually abused by Jackson. While she was in the hospital, DCFS took custody of her children. After defendant was discharged from the hospital, she was allowed supervised visits with her children. The first unsupervised visit with S.J. occurred on May 7, 1987.

Defendant testified that after she picked S.J. up at the center, they returned to Tubman Shelter, where she was residing. Defendant stated that sometime after lunch, she was instructed by the lady at the desk to take S.J. into her room and examine her for any kind of marks. Defendant stated that she took S.J. to her room, pulled her dress up, removed her panties, and examined her. Defendant did not find any marks on S.J. Defendant denied committing any sexual acts with S.J.

At the conclusion of trial, the judge found that despite some inconsistencies, the testimony of S.J. provided clear and convincing evidence that she was made to perform oral sex on defendant, and that defendant performed the same on her on May 7, 1987. Relying upon the specific facts as aggravation, the judge stated that he considered the offense "obnoxious and obscene *** crude and how totally devoid of any moral character, turpitude or any redeeming social value was the mother." Defendant was sentenced to 20 years' imprisonment.

■ Defendant first contends that her minimal due process rights were violated when both defense counsel and the State merely stipulated at the restoration hearing that she was fit to stand trial. Defendant argues that the trial court erred in acceding to the stipulation rather

than exercising its discretion and making an independent decision as to defendant's fitness.

Defendant relies upon *People v. Thompson* (1987), 158 Ill. App. 3d 860, 511 N.E.2d 993, for the proposition that a prior adjudication of unfitness to stand trial raises the presumption that defendant remains unfit, and that a court's subsequent finding of fitness may not be based on a stipulation to psychiatric conclusions. We find, however, that the facts in this case are clearly distinguishable from *Thompson*. At the fitness hearing in *Thompson*, the parties simply stipulated to findings of doctors contained in reports and their conclusion that defendant was fit to stand trial rather than stipulating that, if called to testify, the qualified psychiatrist or psychologist who had examined defendant would testify that in his opinion he was fit to stand trial. While this distinction can be characterized as a fine one, it is one drawn by our supreme court in *People v. Lewis* (1984), 103 Ill. 2d 111, 468 N.E.2d 1222. It is also significant that the trial judge in *Thompson* failed to review the reports and question the defendant about his own fitness to stand trial.

In this case, the colloquy at the restoration hearing expressly sets forth that "*if* doctors were called, stipulation would include the fact that she became unfit and that later was reexamined, and with proper medication, is fit for trial." (Emphasis added.) Further, defense counsel expressly stated that Dr. Gershin Kaplan of the Psychiatric Institute would so testify. At that point, the court queried defendant as to whether she was taking her medication. After defendant's affirmative response, the court made its pronouncement that defendant was fit to stand trial.

In *People v. Mounson* (1989), 185 Ill. App. 3d 31, 540 N.E.2d 834, this court held that defendant's due process rights were not violated where attorneys did not merely stipulate to expert's conclusions, and where the court was free to rely on the report and on its own in-court observations in determining defendant's fitness to stand trial. We conclude, therefore, that because the facts in this case demonstrate that the trial judge reviewed the report filed by the staff psychiatrist and did not merely rely upon his conclusions, and where the trial judge had the opportunity to observe defendant's demeanor and determined that she was in fact taking her medication, the restoration hearing did not offend minimal due process.

Defendant next asserts that attempts to impeach her prejudiced her case because the State's cross-examination of her consisted of unsupported insinuations that defendant told an inconsistent story. Defendant's argument is based on the following questions posed to her by the State during cross-examination:

"ASSISTANT STATE'S ATTORNEY: Well, also at the time did you strike or hit or cause injury to S.J. with a strap or belt?

DEFENDANT: No.

ASSISTANT STATE'S ATTORNEY: No. Do you recall having a conversation with Karen Allen that you struck S.J. with a strap?

DEFENDANT: No.

ASSISTANT STATE'S ATTORNEY: Or anytime in November of 1986 having a conversation with Karen Allen from DCFS admitting that you struck S.J.?

DEFENDANT: No."

The State never produced Karen Allen to perfect impeachment by showing that the alleged inconsistent statement was ever made, and the State acknowledges that it erred in not doing so. We agree with the State, however, that the error was harmless.

■ Improper cross-examination is not reversible error if it can be considered harmless (*People v. Enis* (1990), 139 Ill. 2d 264, 564 N.E.2d 1155), and in a bench trial it is presumed that the trial judge has considered only competent evidence in reaching a decision. (*People v. Coleman* (1991), 212 Ill. App. 3d 997, 571 N.E.2d 1035.) While it is improper for the prosecution to make an unsupported insinuation of misconduct on cross-examination without producing supporting evidence in response to a denial of misconduct (*People v. Jurczak* (1986), 147 Ill. App. 3d 206, 497 N.E.2d 1332), reversal is required only where the insinuations are substantial, repeated, and definitely prejudicial. See *Jurczak*, 147 Ill. App. 3d 206, 497 N.E.2d 1332; *People v. Hawkins* (1975), 61 Ill. 2d 23, 329 N.E.2d 221.

■ It is clear here that the cross-examination in question did not rise to the level of substantial, repeated and prejudicial questioning; rather, the error consisted of three questions concerning whether defendant had a conversation with Allen about striking S.J. It is noteworthy that the questions were posed to defendant only after she acknowledged that she had trouble controlling her children, that she had been in contact with DCFS and Allen in the past, and that at some time in the past she had struck one of her children with a belt. Given the context in which the cross-examination was conducted, and the fact that there was no extended pattern of unsupported insinuation, we find no reversible error.

■ Defendant's final contention is that the 20-year sentence is excessive. Defendant was found guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)), which is a Class X offense (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(c)) punishable by no less

than six years' and no more than 30 years' imprisonment (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3)). Defendant had no prior criminal record. When the trial court is determining an appropriate sentence, the defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed. *People v. Darnell* (1981), 94 Ill. App. 3d 830, 419 N.E.2d 384.

We recognize that the facts of this crime are reprehensible and heinous. We also recognize that sentencing is a matter of judicial discretion, and absent an abuse of discretion by the trial court, a sentence may not be altered on review. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Nevertheless, we find that the sentence imposed in the present case was excessive.

We do not believe that the trial court took into consideration defendant's mental condition as a mitigating factor. Several months before the offense, defendant was hospitalized with a nervous breakdown. Midway through the trial, defendant was diagnosed with a schizoaffective disorder and was again hospitalized for her mental condition. Although defendant was subsequently found fit to stand trial, the staff psychiatrist recommended that defendant remain involved in out-patient individual psychotherapy with supplemental medication. Clearly, defendant's mental history warranted consideration as a mitigating factor.

Just as importantly, at the time of sentencing, the trial judge made repeated references to the criminal sexual acts to S.J. by her father and other members of the family, not by defendant. Indeed, the judge stated that he believed S.J.'s father, Jackson, was the principal offender, and that at first defendant was an "unwilling partner." The trial court improperly considered the criminal acts of others in imposing sentence on defendant. In so doing, the trial court abused its discretion in the imposition of sentence upon defendant.

Accordingly, we reduce the sentence from 20 years to 10 years.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified.

Judgment affirmed as modified.

RAKOWSKI, P.J., and EGAN, J., concur.