THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY BROWN, Defendant-Appellant.

First District (4th Division)   No. 1—91—0305

Opinion filed February 11, 1993.

Rita A. Fry, Public Defender, of Chicago (Karen Tietz and Murray M. Coffey, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Brian Clauss, and Stephen Dinolfo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Anthony Brown, was convicted of first-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)), following a jury trial in the circuit court of Cook County. Defendant was sentenced to a prison term of 45 years. Defendant, who was tried separately from five codefendants, contends on appeal that (1) the trial court erred in refusing his requested jury instructions; (2) he was not proved guilty beyond a reasonable doubt; and (3) his 45-year sentence is excessive.

We affirm as modified.

The People charged defendant with first-degree murder for the shooting death of Stephen Anderson. The circumstances preceding the shooting involved the purchase of an automobile by the victim's brother, Jonathan Anderson, from Eric Langham, one of defendant's codefendants. At trial, Jonathan testified that in February 1989 he and Langham began negotiating the purchase price of Langham's car for which Langham initially requested $5,000. A few weeks later, however, Jonathan and Langham both agreed to a purchase price of $3,500. Jonathan paid Langham the entire $3,500 within two days.

On August 22, 1989, Langham contacted Jonathan and accused him of telling others that he had beaten Langham out of his car. Langham insisted that Jonathan owed him $1,500 more. Langham told Jonathan, "I am going to have my boys beat the shit out of you and bring me my car." Langham then told Jonathan to meet him at the area where the two of them grew up, referring to the area near Cermak Road and Kilbourn Avenue in Chicago. Jonathan offered to return the car if Langham would return his money.

Later that evening, Jonathan told Stephen that he was having trouble with the man who sold him the automobile. When Jonathan informed Stephen that he would be meeting Langham later that evening, Stephen stated that he would accompany Jonathan. Jonathan, however, told Stephen not to come along.

Jonathan also testified that he went to Kilbourn and Cermak, accompanied by two friends. Once there, he spoke with the person in the driver's seat of a parked Chevrolet Blazer just before Langham

arrived, driving a motorcycle. Langham first stopped near a pink car parked nearby and was handed something from a passenger inside the car. Langham then approached Jonathan, grabbed him by the neck, and placed a pistol against his head. Langham ordered everyone else to retreat. Stephen, who was also present, began to approach Jonathan and Langham, who were standing in the middle of the street. Stephen demanded that Langham release Jonathan. Immediately thereafter, gunfire erupted from several different places. Jonathan saw defendant standing near the pink car, firing a handgun. Jonathan then saw Stephen fall to the ground.

Jonathan admitted that he had a .25-caliber pistol inside his car when he went to Cermak and Kilbourn. Once there, however, he never had the gun in his hands. Jonathan claimed that neither Stephen nor any of his friends were armed.

Jarvis Evans and Rodney McNeal each testified that on August 22, 1989, at 11 p.m., they drove together with Stephen to the area near Cermak and Kilbourn. Once there, Evans, who was driving, parked near a Chevrolet Blazer as they waited for Jonathan to arrive. McNeal saw a woman and a man sitting inside a pink car parked nearby. A short time later, Jonathan arrived. Moments later, Langham and another individual arrived, riding a motorcycle. After briefly speaking with Jonathan, Langham grabbed Jonathan by the neck and placed a pistol against his head. Stephen began to approach Jonathan and Langham after which gunshots were fired from several different directions. Stephen was shot while running away. At trial, McNeal identified defendant as the man who had been sitting inside the pink car.

Robert Lee testified that on August 22, 1989, he and another individual accompanied Jonathan to Cermak and Kilbourn. After they arrived, Jonathan exited the car and spoke with the driver of the Chevrolet Blazer parked nearby. Meanwhile, a motorcycle carrying two persons approached. The driver got off of the motorcycle and met Jonathan in the middle of the street. There, he grabbed Jonathan by the neck and placed a pistol to his head. Jonathan pushed the gun away and began running. Gunshots were fired from various directions, during which Lee observed defendant firing a gun from inside a pink car parked nearby.

Thaddeus Melko, an evidence technician of the Chicago police department, testified that on August 23, 1989, at approximately 1:15 a.m., he was assigned to a homicide investigation at 2100 South Kilbourn Avenue. After arriving on the scene, the officer was informed that the victim had been shot to death. The officer conducted a search

for physical evidence and found numerous shell casings near the victim's body. During further investigation, the officer found a .25-caliber pistol under the seat of Jonathan's car. Officer Melko found no evidence that the pistol had been fired.

Robert Smith, a qualified firearms expert, testified at trial that he examined the pistol found in Jonathan's car. After examining the casings recovered after the shooting, Smith concluded that none of the shells came from Jonathan's gun. Smith also testified that his examination of evidence recovered from the scene also revealed that six different weapons had been fired.

Dr. Robert Kirschner, deputy chief medical examiner, testified that he performed an autopsy on the victim's body which revealed that he had sustained four gunshot wounds and approximately 150 shotgun pellet wounds. The cause of death was multiple gunshot wounds and the manner of death was homicide.

At the close of the evidence, the jury found defendant guilty of first-degree murder. Defendant filed a motion for a new trial, which the trial court denied. Following arguments in aggravation and mitigation, the trial court sentenced defendant to 45 years in the Illinois Department of Corrections. Defendant now appeals both his conviction and his sentence.

Defendant first contends that the trial court abused its discretion in refusing his requested jury instructions. It is well settled that both an accused and the State are entitled to have the jury instructed as to the law applicable to their respective theories of the case, provided some evidence supports the particular theory. (*People v. Stamps* (1982), 108 Ill. App. 3d 280, 297.) Supreme court rules require that once a trial court determines that the jury should be instructed as to a particular subject, it must then determine whether an applicable Illinois Pattern Jury Instruction (IPI) exists. (134 Ill. 2d R. 451(a).) If an applicable IPI instruction exists, it must be used unless it fails to accurately state the law. *People v. Thomas* (1991), 217 Ill. App. 3d 698, 703.

In the present case, the State tendered the following jury instruction, *inter alia*, during the jury instruction conference:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid or attempts to aid the other person in the planning or commission of the offense." (Illinois Pattern Jury Instructions,

Criminal, No. 5.03 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d No. 5.03 (Supp. 1989)).)

The trial court accepted this instruction over the defense counsel's objection and his three non-IPI instructions which stated in essence that defendant could not be found guilty merely because of his presence at the crime scene.

Defendant now argues on appeal that given the variety of evidence presented at trial concerning his presence during the shooting, the jury instruction tendered by the State was inadequate in that the jury could have convicted him based on his mere presence. Defendant also claims that the instruction failed to instruct the jury as to his theory of the case, namely, that he was not present at the crime scene, but even if he had been present he did not participate in the shooting. Our review of the law, together with the facts of this case, requires a finding that the non-IPI instructions tendered by defense counsel were properly denied.

In *People v. Thomas* (1988), 175 Ill. App. 3d 521, this court reasoned that the decision to give or refuse a non-IPI instruction is within the trial court's discretion, and refusal of a non-IPI instruction does not constitute an abuse of discretion if an applicable IPI instruction exists. (*Thomas*, 175 Ill. App. 3d at 528.) There, we also recognized that the IPI instruction on accountability encompasses instructions concerning mere presence at the scene of a crime, such as those offered by the present defendant. (*Thomas*, 175 Ill. App. 3d at 529.) We went on to hold that the trial court properly refused defendant's non-IPI instruction where the jury was given IPI instructions on accountability, the presumption of innocence, the required burden and quantum of proof necessary to convict, and the elements of the charged offenses. *Thomas*, 175 Ill. App. 3d at 529-30.

In the present case, the trial court instructed the jury concerning the presumption of innocence, the burden of proof and the quantum necessary to convict, and the elements of murder, all in addition to IPI Criminal 2d No. 5.03 (Supp. 1989). In so doing, the trial court fully and adequately apprised the jury of both the applicable law and defendant's theory of the case. Moreover, in *People v. Walker* (1976), 44 Ill. App. 3d 494, the court stated "the refusal of a tendered instruction is not error if the essence of the instruction is covered by other instructions which are given." (*Walker*, 44 Ill. App. 3d at 498.) Since the essence of defendant's non-IPI instructions was covered by the IPI instructions which were given, we find no abuse of discretion.

Next, defendant contends that, given the contradictory nature of the evidence, he was not proved guilty beyond a reasonable doubt.

Where a conviction is challenged based on insufficient evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* [emphasis in original] rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt.' " *(People v. Collins* (1985), 106 Ill. 2d 237, 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Following a guilty verdict, the determination made by the trier of fact regarding witness credibility and the weight of the evidence are " 'preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' " (Emphasis in original.) *(Collins,* 106 Ill. 2d at 261, quoting *Virginia,* 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.) Moreover, a reviewing court will not overturn a conviction unless the improbable or unsatisfactory nature of the evidence raises a reasonable doubt of defendant's guilt. *People v. Steidl* (1991), 142 Ill. 2d 204, 226.

■ In the case at bar, we believe the evidence sufficiently supports the jury's determination of guilt. At trial, Rodney McNeal testified that when he arrived at Cermak Road and Kilbourn Avenue he saw defendant sitting in a pink car. Also, Jonathan Anderson and Robert Lee both testified that they each saw defendant firing a gun during the shooting. This evidence supports the jury's conclusion that defendant was present at the scene and either participated in the shooting or was legally accountable for the actions of his codefendants who committed the murder.

Even so, defendant argues that the contradictory nature of the evidence presented to the jury fails to support his guilt beyond a reasonable doubt. To support his argument, defendant points to the fact that (1) Lee mentioned defendant's presence at the crime scene for the first time at trial, and (2) Lee was awaiting sentencing on an unrelated matter. The State correctly points out, however, that this information, which was presented to the jury, went to the credibility of the witness. Moreover, it is the trier of fact who resolves any conflicts in the evidence, and who also determines the credibility of witnesses and the weight to be given their testimony. *People v. Collins* (1985), 106 Ill. 2d 237, 261-62.

In the present case, the jury believed defendant was present when the victim was shot to death, and either he shot the victim or he was accountable for the actions of his codefendants who shot the victim. Given the jury's determination of defendant's guilt, the jury chose to believe the testimony of the State's occurrence witnesses. Viewing the evidence in the light most favorable to the prosecution, we find

that any rational trier of fact could have found defendant guilty beyond a reasonable doubt. Consequently, we conclude that defendant was proved guilty of first-degree murder.

Finally, defendant contends that his 45-year sentence was excessive. Following a conviction for first-degree murder, a defendant may be sentenced to a term of not less than 20 years and not more than 60 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1).) In making the sentencing decision, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) A trial court's sentencing decision may not be altered on review unless the trial court abused its discretion, *i.e.*, the sentence diverges from the purpose and spirit of the law. (*People v. Williams* (1990), 196 Ill. App. 3d 851, 867.) Moreover, an abuse of discretion may be found even where a sentence is within the statutory limitations. *Williams*, 196 Ill. App. 3d at 867.

■ Under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), this court is empowered to reduce an excessive sentence where the sentencing court abused its discretion in making the sentencing decision. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) Given that at the time of the offense defendant was 20 years old and lacked any prior criminal history, we believe that his rehabilitative potential was not adequately considered. (See *People v. Steffens* (1985), 131 Ill. App. 3d 141.) Accordingly, under the authority of Supreme Court Rule 615(b)(4), we reduce defendant's sentence for murder from 45 years to 30 years.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified by this opinion.

Affirmed, as modified.

JIGANTI, P.J., and CAHILL, J., concur.