2024 IL App (1st) 221449-U

SECOND DIVISION
February 13, 2024

No. 1-22-1449

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 13308 |
| | ) | |
| CHADWICK PERKINS, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the trial court's judgment sentencing defendant to 27 years' imprisonment for murder; the trial court properly considered all of the factors in mitigation and aggravation.

¶ 2    The State charged defendant, Chadwick Perkins, with the first degree murder of his stepfather, Michael Montgomery. Following a trial in which defendant represented himself *pro se*, the circuit court of Cook County convicted defendant and sentenced him to 27 years' imprisonment. Defendant appeals his sentence only, arguing that it is excessive "given his minimal, nonviolent criminal history, mental health problems, and periods of homelessness."

¶ 3    For the following reasons, we affirm the trial court's judgment.

¶ 4                                      BACKGROUND

¶ 5    Because of the limited basis of the appeal, we will confine our discussion to matters related to the issue of defendant's sentencing. Defendant has a history of mental health issues. First private counsel, then the public defender, briefly represented defendant and defense counsel requested a behavioral clinical examination (BCX) of defendant. The BCX concluded defendant was sane at the time of the offense and fit to stand trial with medication. Defendant's medications were an antidepressant and a sleep aid.

¶ 6    The BCX revealed that defendant received treatment as a child for inattention but his mother deprived him of his medication; in 2011 he was diagnosed with depression and received mental health care; and, in 2014, defendant experienced anxiety and sleep problems. Defendant had a period of homelessness in 2014 and reported abuse by the victim at that time. In 2015 defendant moved to Texas where he was employed but he took a leave of absence due to anxiety and panic attacks. He suffered another period of homelessness in 2015 in Texas and was later hospitalized there and treated for mental health issues. One physician noted that defendant exhibited bizarre behavior, paranoia, and delusional thoughts. Defendant did not take his medication while hospitalized but did continue to take his antidepressant after he was released from the hospital in Texas.

¶ 7    After his arrest for this incident, defendant self-reported to the hospital that he had been diagnosed with schizophrenia. Police did note that defendant talked and laughed with himself after his interview. Cermak Health Services interviewed defendant after his arrest, and defendant self-reported that two months prior to the interview he was prescribed Xanax, but he later changed that to Zoloft. He also reported that his last panic attack had occurred the year before the murder. Cermak admitted defendant to the psychiatric infirmary after observation of "bizarre" behavior by defendant, that defendant was found walking around naked, and his history of

mental health issues. At Cermak doctors prescribed the antidepressant, Conazepam, and two medications for insomnia.

¶ 8    The trial court confirmed that defendant was taking his antidepressant and insomnia medications before allowing defendant to proceed *pro se*. For purposes of this appeal, it will suffice to say that the State's evidence included three eyewitness accounts of the incident between defendant and the victim as well as circumstantial physical evidence. Defendant was seen on top of the victim attacking him. The victim suffered a knife attack and 50 stab wounds with multiple knives. In his own defense, defendant denied the incident occurred and offered a different explanation for the fact defendant was found covered in the victim's blood. Defendant claimed he received the blood stains while trying to render aid to the victim after he heard the victim cry for help and then found the victim in the street. Defendant claims the State's witnesses were all lying. The jury found defendant guilty of first degree murder.

¶ 9    Defendant filed a *pro se* motion for a new trial, after which he requested the trial court appoint the public defender to represent him. Thus, defendant was represented by counsel for some posttrial matters and sentencing. On September 19, 2022, the trial court held a sentencing hearing. Prior to the sentencing hearing, defendant's appointed counsel argued a supplemental motion for a new trial. In arguing that motion, the defense argued defendant told her that during trial, defendant suffered anxiety and panic that forced him to stop his cross-examination and sit down. The defense noted that defendant has suffered depression and anxiety since 2011 and was prescribed antianxiety medication. He had also been on medication to treat depression. The defense argued that defendant received multiple diagnoses of these conditions therefore his anxiety and depression were well documented.

¶ 10    In its ruling the trial court stated it had read the supplemental motion and noted defendant's case had been before this trial judge since 2016. The court noted it engaged defendant in dialogue regarding defendant's decision to represent himself and repeatedly inquired defendant about his ability to represent himself. The court stated defendant was engaged at every stage of trial. The court noted it did not observe anything that looked like a panic attack or that defendant was unable to question witnesses or to present arguments on his own behalf. The court denied the supplemental motion for a new trial

¶ 11    At the sentencing hearing, the State introduced evidence of a pending charge against defendant for criminal damage to government property. Defendant damaged a sprinkler head but claimed it was an accident and that he would pay for the damage. Defendant's sister testified that defendant "is just sick." After returning home from Texas, he talked to himself. She testified he could not tell who she was at times. Defendant's cousin testified she hoped defendant receives the help he needs and that it was defendant's aunt's goal to get defendant long term care. Defendant's criminal history consisted of a 2016 conviction for resisting a peace officer for which defendant was sentenced to two days in jail, and 2015 and 2016 convictions for criminal trespass to property each of which resulted in 30 days in jail. The State conceded "there is a lack of violence" in defendant's criminal history.

¶ 12    Defendant's attorney argued in favor of a shorter sentence because defendant would have family members willing to assist him with the help he needs when he is released. Defendant continued to deny he committed the murder.

¶ 13    In its oral ruling after the sentencing hearing, the trial court stated this case involved "a vicious attack" on the victim "where the Defendant is responsible. He actually did it." The court noted that defendant stated he is not a bad person, but "He's not being sentenced for the type of

person he is. He's being sentenced for the actions that he took and that was a decision." The court stated: "There has to be a thoughtful, considered, balanced sentence based on the Defendant's action, choices, the devastation that he left and visited upon his family and the life that was snuffed out by his vicious attack." The court stated it had considered the facts of the case and all of the statutory factors in aggravation and mitigation. The court specifically stated: "I have considered the history and character of the Defendant." The trial court sentenced defendant to 27 years' imprisonment.

¶ 14    This appeal followed.

¶ 15                                ANALYSIS

¶ 16    This is an appeal from a sentencing judgment.

> "Criminal penalties must be determined according to the seriousness of the
> offense and with the objective of restoring the offender to useful citizenship.
> [Citation.] *** A sentence imposed within the statutory range is presumed to be
> proper and will not be disturbed absent an abuse of discretion. [Citation.] An
> abuse of discretion is found when a sentence is greatly at variance with the spirit
> and purpose of the law or manifestly disproportionate to the nature of the
> offense." *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 16.

¶ 17    The sentencing range for first degree murder is 20 to 60 years. 730 ILCS 5/5-4.5-20(a) (West 2022). Defendant's sentence is within the statutory range; so we operate from the presumption it is proper. *Id.* On appeal, defendant argues his sentence of seven years above the minimum sentence, or 27 years' imprisonment, in excessive, in light of his minimal, nonviolent criminal history; history of mental illness and periods of homelessness; family support; and because a lengthy sentence is an inefficient means of returning him to useful citizenship.

¶ 18     In support of his argument the 27-year sentence is excessive in light of defendant's nonviolent and minimal criminal background, defendant primarily relies on *People v. Steffens*, 131 Ill. App. 3d 141, 153 (1985), in which this court found, in part, that "[i]n the light of *** the defendant's *** lack of a significant criminal record, we believe that defendant's rehabilitative potential was not given adequate consideration." This court described the analysis this way:

> "The legislature has determined that adequate retribution for murder may be satisfied by imposition of the minimum sentence ([citation]), and *** we [have] described the further analysis necessary under the constitutional sentencing provision as follows:
>
>> 'Each case, of course, must be considered separately for its own particular illumination of, and response to, the meaning of the [constitutional] mandate. The nature and circumstances of the offense and the history and character of the defendant will be the governing factors.' [Citation.]" *Steffens*, 131 Ill. App. 3d at 151-52.

¶ 19     Applying the foregoing analysis in this case, we find the trial court did not abuse its discretion in sentencing defendant to seven years above the minimum. In *Steffens*, a "confrontation between [the] defendant and the victim was initiated by the victim and, even though [the] defendant returned to the scene apparently to cause some sort of trouble, the murder itself was the result of a sudden escalation of the encounter between defendant and the victim's family." *Id*. at 152. In this case, as in *Steffens*, the offense might not have been "a calculated murder." *Id*. at 152. However, in *Steffens*, the defendant "was only 19 years old, was steadily employed, had no previous criminal record, and lived with his parents." *Id*. In this case, defendant was 26-years old at the time of the offense; defendant did have a previous criminal

record, albeit a nonviolent one; and, although defendant lived with his parents at the time of the offense, he previously left his family support network and moved to Texas, where he continued to suffer from and exhibit mental health issues. Defendant's crime may not have been "calculated" but it was nonetheless a brutal physical attack. There was evidence that defendant attempted to hide from authorities to evade capture.

¶ 20    Defendant argues he has suffered mental health issues since he was a child, his family recognizes defendant's issues, and defendant's family wanted to get him the help he needed. In fact, defendant makes much of his family's support in arguing the trial court abused its discretion. But despite his illness and that support, defendant voluntarily chose to leave his family support network and move to Texas, which is demonstrative of a character that fails to acknowledge his own illness. Defendant continued at sentencing to profess that nothing was wrong with him, calling into question the effectiveness of any support that is offered to him.

¶ 21    The relevant facts of this case reasonably support finding that the trial court's sentence is not greatly at variance with the spirit and purpose of the law or manifestly disproportionate. Accord *People v. Brown*, 243 Ill. App. 3d 170, 176 (1993) (also relied upon by defendant). The *Brown* court first found that the law required that:

> "In making the sentencing decision, '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' (Ill. Const. 1970, art. I, § 11.) A trial court's sentencing decision may not be altered on review unless the trial court abused its discretion, *i.e.,* the sentence diverges from the purpose and spirit of the law. [Citation.]" *Brown*, 243 Ill. App. 3d at 176.

¶ 22    In *Brown* the court found that "[g]iven that at the time of the offense defendant was 20 years old and lacked any prior criminal history, we believe that his rehabilitative potential was not adequately considered." *Id.* at 176. *Brown* is distinguishable from this case. In *Brown*, the defendant "was 20 years old and lacked any prior criminal history." *Id.* In that case, someone else, the defendant's brother, initiated the confrontation that led to the shooting death. See *id.* at 172. In this case, defendant was slightly older, did have a criminal history, and most significantly, no third party was involved prior to defendant's violent attack against the victim. Defendant has committed crimes before, and it is now evident the public needs protection from defendant, who violently attacked the man he called his father (rather than stepfather) and attempted to hide to avoid arrest; leaves his family support; and even when he does receive treatment refuses to take his medication.

¶ 23    Based on those facts, a reasonable trial judge could find a sentence above the minimum justified and that 27 years is proportionate to the offense. We cannot say that no reasonable person would agree. Although defendant's background shows an absence of a violent criminal history, we find no abuse of discretion because the trial court's sentence is proportionate, does not vary from the spirit and purpose of the law, and is not fanciful where it is based on the evidence. See *People v. Coty*, 2018 IL App (1st) 162383, ¶ 51 ("A reviewing court will find an abuse of discretion only where the sentencing decision is fanciful, unreasonable, or arbitrary and no reasonable person would take the view adopted by the trial court.").

¶ 24    In support of his argument that his sentence is an abuse of discretion because it does not adequately consider defendant's mental health issues as a contributing factor to his criminal activity, defendant cites *People v. Fern*, 189 Ill. 2d 48, 53 (1999). The issue actually decided in *Fern* was "whether the excessiveness of a sentence may be determined from a consideration of

the sentences imposed on defendants in separate, unrelated cases. *Fern*, 189 Ill. 2d at 52-53. Nonetheless, in reviewing "our state's sentencing structure," our supreme court wrote that "[t]he trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's *** social environment ***." *Id.* at 53.

¶ 25   Our supreme court later added:

"the range of sentences permissible for a particular offense is set by statute. Within that statutory range, the trial court is charged with fashioning a sentence based upon the particular circumstances of the individual case, including the nature of the offense and the character of the defendant. [Citation.] The sentencing judge is to consider 'all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding.' [Citation.] In reviewing a claim that a sentence within statutory limits is excessive, the court must consider whether, given the particular facts of the case, the sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 55-56.

See also *People v. Robinson*, 221 Ill. App. 3d 1045, 1052 (1991) ("When the trial court is determining an appropriate sentence, the defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed."). The *Robinson* court found that the trial court "abused its discretion in the imposition of sentence." *Id*. In *Robinson*, this court found the trial court had not taken into consideration the defendant's mental condition as a mitigating factor. *Id*. However, the court also found equally important the fact the trial court "improperly

considered the criminal acts of others in imposing sentence on [the] defendant." *Id.* Given the competing bases for the court's decision, we find *Robinson* to be of little persuasion. See *id.*

¶ 26    In this case, however, defendant argues the trial court failed to properly consider defendant's mental illness as a contributing factor to his criminal activity because the "court did not address these issues when pronouncing sentence." Defendant also argues the trial court ignored the impact of his age on his likelihood of recidivism. We find that the trial court's failure to specifically mention defendant's mental health during sentencing is an improper ground on which to find the trial court abused its discretion. We also find no abuse of discretion in sentencing defendant because of his age. We find based on the facts of this case that defendant's sentence is not greatly at variance with the purpose and spirit of the law and is not manifestly disproportionate to the nature of the offense.

¶ 27    First regarding his age, defendant argues that since he is less likely to recidivate as he gets older, particularly older than 50, sentencing him to a term of imprisonment until he is 53 years-old is "of questionable effectiveness." That argument itself seems illogical in that the trial court could reduce the chance of recidivism by keeping defendant in prison until he is 50, which is what it did.

¶ 28    Regardless, there is no evidence the trial court failed to consider either factor. The trial court stated it had considered all of the statutory factors in aggravation and mitigation. See 730 ILCS 5/5-5-3/1(a)(4) (West 2020) (listing "substantial grounds tending to excuse or justify the defendant's criminal conduct" as mitigating factor). Further, the trial court is presumed to know and follow the law. See *People v. Hearring*, 2022 IL App (1st) 192064, ¶ 44 (factors in aggravation and mitigation include defendant's mental health). The court also stated it had considered the facts of the case, the testimony at the sentencing hearing (which addressed

defendant's history of mental illness), the presentence investigation report, and defendant's allocution. The court also stated it has listened to defendant since 2016 when he first entered the courtroom and all of the arguments of counsel. We note that, although not technically part of the sentencing hearing, immediately prior to the sentencing hearing, defendant's mental condition was the focus of the defense argument on defendant's supplemental motion for a new trial. In addition to those arguments, the trial court also stated it had read the supplemental motion detailing those issues. We also note that defendant has not pointed to any evidence that directly connects his mental illness to the crime.

¶ 29      In *People v. Kindle*, 2021 IL App (1st) 190484, the defendant argued the trial court abused its discretion in sentencing him because it did not consider all of the mitigating factors. *Id.* ¶ 69. The court found the trial court did not abuse its discretion in sentencing the defendant. *Id.* ¶ 73. The court noted that "other than the trial court's failure to mention or comment on the other factors, [the] defendant points to nothing in the record affirmatively demonstrating that the court did not consider the relevant sentencing factors." *Id.* ¶ 70. On the contrary, the record showed that the trial court considered the relevant factors because the court "had before it [the] defendant's PSI, which addressed [the] defendant's age, outside pressure and influences, family relationships and home environment, education, employment, and criminal background;" as well as a sentencing memorandum *Id.* ¶ 71. This court found that:

> "When mitigating factors have been presented to the trial court, it is presumed that the court considered them absent some indication to the contrary. [Citation.] We find no such indication here. Although the court did not specifically address every factor, it is not required to recite or assign a value to each mitigating and aggravating factor in the record. See *People v. Villalobos*,

> 2020 IL App (1st) 171512, ¶ 74 (finding that when considering the statutory
> factors in section 5-4.5-105, the trial court need not articulate each and every
> factor it considered in imposing a sentence)." *Kindle*, 2021 IL App (1st) 190484,
> ¶ 73.

The *Kindle* court found the trial court did not abuse its discretion. *Id.*

¶ 30    In this case, nothing in the record indicates the trial court failed to consider defendant's mental condition or age. The record reflects that defendant's mental condition was presented to the trial court, and defendant's age would at minimum be in his PSI. The law does not permit this court to presume the trial court ignored it. *Kindle*, 2021 IL App (1st) 190484, ¶ 73. Furthermore, defendant's sentence of seven years above the minimum is not disproportionate to the violent offense committed nor greatly at variance with the spirit and purpose of the law. The sentence is reasonable based on the facts of the case. "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. [Citation.] *** [T]he reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. [Citation.]" *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). We will not substitute our judgment for that of the trial court. Based on the facts of this case, we find the trial court did not abuse its discretion in sentencing defendant. *Id.*

¶ 31                                    CONCLUSION

¶ 32    For the foregoing reasons, the circuit court of Cook County is affirmed.

¶ 33    Affirmed.