**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240416-U

Order filed October 30, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0416 Circuit No. 21-CF-401 |
| DANNY PARNELL, | ) ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justices Hettel and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    (1) Trial counsel was not ineffective for failing to advise defendant of his Class X sentencing eligibility, as defendant was not prejudiced by counsel's deficient performance. (2) Counsel's failure to object to the court's consideration of an aggravating factor at sentencing did not constitute ineffective assistance where the factor was not inherent in the offense.

¶ 2    Defendant, Danny Parnell, appeals his aggravated criminal sexual abuse conviction, arguing that he received ineffective assistance when his counsel failed to advise him that he would be subject to a higher sentencing range based on his criminal history and failed to object to the

Kankakee County circuit court's consideration of an improper aggravating factor at sentencing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with, *inter alia*, aggravated criminal sexual abuse (720 ILCS 5/11-1.60(a)(1) (West 2020)) and two counts of aggravated kidnapping (*id.* § 10-2(a)(6), (7)). Relevant to this appeal, the aggravated criminal sexual abuse charge alleged that defendant, by use of force or threat of force, put his mouth on the breast of R.F. while displaying a dangerous weapon.

¶ 5        At trial, R.F. testified that on May 27, 2021, approximately three weeks after meeting defendant through an online dating platform, she exchanged text messages with defendant indicating that she wanted to come to his residence to drop off a gift for his birthday. In the text messages, R.F. told defendant that she was not interested in engaging in sexual activity with him because she was menstruating and explained that she needed to leave after dropping off the gift. When R.F. arrived at defendant's residence later that evening, defendant opened the passenger door and entered the vehicle as R.F. reached into the backseat to retrieve his gift. R.F. yelled at defendant to get out of her vehicle. Defendant refused, and R.F. attempted to exit the vehicle, but defendant grabbed her by the arm and took her cell phone. Defendant then pulled a gun from his pants, pointed it at R.F., and instructed her to drive to a motel. As R.F. drove, defendant fired the gun inside the vehicle.

¶ 6        At the motel, defendant made R.F. rent a room. After entering the room, defendant forced R.F. to undress and handcuffed her wrists behind her back. Defendant kissed and touched R.F.'s face and chest. When R.F. cried, defendant hit her. R.F. told defendant that she needed something to drink. Defendant allowed R.F. to get dressed and had her drive to the nearest gas station. When they returned to the motel room, defendant ordered R.F. to undress and handcuffed her wrists and

2

ankles. Defendant choked R.F., placed the gun on her lip and around her neck, and told R.F. that she was going to die. Defendant eventually placed the gun on the floor and removed the handcuffs from R.F.'s wrists when she began crying and complaining of pain. R.F. then waited until defendant fell asleep and fled from the motel room. As she drove away, R.F. called 911 and was directed to pull over and wait for the police to arrive. A responding officer removed the handcuffs from R.F.'s ankles and R.F. was taken to the hospital.

¶ 7        The State introduced testimony from hospital staff detailing R.F.'s account of the incident, which included R.F. stating that defendant had stuck the gun in her mouth and ran it across her neck multiple times. Further testimony and hospital photographs indicated that R.F. had bruising on her neck, shoulder, and breasts, as well as redness around her wrists and ankles following the incident. Swabs from R.F.'s neck and breasts were collected at the hospital and tested for DNA. Defendant could not be excluded as having contributed to the male DNA profile identified on the swabs. Through police testimony, photographs were presented depicting the damage to the passenger side door of R.F.'s vehicle and the shotgun pellets that were found near the damage. Evidence and photographs also established that police recovered a firearm, specifically a revolver capable of firing a shotgun shell, on the floor of the motel room where the incident occurred. Three DNA profiles were found on the firearm, including one major male profile and two minor profiles. Defendant could not be excluded from the main DNA profile, with the exclusion probability calculated at 1 in 320 octillion. As the two minor DNA profiles were potentially incomplete and unsuitable for comparison, it was not possible to determine if the contributor for either profile was male or female.

¶ 8        At the close of evidence, defendant declined to have any lesser included offense instructions offered to the jury after conferring with counsel. The jury found defendant not guilty of the aggravated kidnapping charges and guilty of aggravated criminal sexual abuse.

¶ 9        During his statement in allocution at sentencing, defendant informed the court that counsel had not advised him that, due to his age and criminal history, a conviction of the Class 4 offense of aggravated criminal sexual abuse would subject him to mandatory Class X sentencing under section 5-4.5-95(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(b) (West 2020)). Defendant stated that if he had been properly informed about his Class X sentencing eligibility, he would have requested a jury instruction for the lesser included offense of criminal sexual abuse because a conviction for the lesser offense would not have triggered mandatory Class X sentencing.

¶ 10       The court construed defendant's statements as a *pro se* ineffective assistance claim and proceeded to conduct a preliminary *Krankel* inquiry. Defendant's counsel confirmed that she had not advised defendant of his Class X sentencing eligibility because she was not aware that he had prior convictions that would subject him to mandatory Class X sentencing. Counsel could not recall if she had spoken with defendant about requesting a lesser included offense instruction. The court denied defendant's ineffective assistance claim, stating:

> "There is a real question about whether on these facts that were presented in front of me, I even would have authorized a lesser included offense had it been requested, given the way that the proofs came in in this matter, and I am not seeing that there is a neglect of the case sufficient to appoint outside counsel on that claim."

¶ 11        Defendant was sentenced to 25 years' imprisonment. In imposing defendant's sentence, the court indicated it had considered defendant's health concerns and his role as a parent in mitigation. In aggravation, the court considered defendant's prior criminal history, R.F.'s victim impact statement, and the facts and circumstances of the case. During the court's explanation of the relevant factors it had considered, the court stated:

> "And then when they came into your room, there was the firearm; a firearm that I can't ignore. *** I certainly can't ignore the fact that this was a firearm that you were in possession of, sir, that you never should have had. You are a convicted felon. State convictions. Federal convictions. You never should have had that gun, and, yet, when you had an opportunity, you didn't hesitate to use it, to use it as a threat.
>
> * * *
>
> Given your prior criminal history and the facts of this case, I cannot say that the State's recommendation in this case is unreasonable by any stretch of the imagination."

The court subsequently denied defendant's motion to reduce his sentence.

¶ 12                                    II. ANALYSIS

¶ 13                         A. Ineffective Assistance of Counsel

¶ 14        On appeal, defendant first argues that his trial counsel provided ineffective assistance by failing to inform him that he was subject to mandatory Class X sentencing under section 5-4.5-95(b) of the Code. At the outset, we accept the State's concession that counsel's performance was deficient for failing to inform defendant about his Class X sentencing eligibility. To preserve defendant's constitutional right to be reasonably informed of the potential maximum penalties for

5

the charged offenses, counsel was obligated to accurately advise him of his Class X sentencing eligibility. See *People v. Nicholson*, 2021 IL App (3d) 180010, ¶ 17. Thus, counsel's failure to meet this obligation constitutes deficient performance. See *id.*

¶ 15 However, to prevail on his ineffective assistance of counsel claim, defendant must satisfy both prongs of the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Petrenko*, 237 Ill. 2d 490, 496-97 (2010). In addition to proving that counsel's performance was deficient, the *Strickland* test requires a showing that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *People v. Johnson*, 2021 IL 126291, ¶ 52. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Whether a defendant was denied the effective assistance of counsel is reviewed *de novo*. *Johnson*, 2021 IL 126291, ¶ 52.

¶ 16 Defendant was indicted for aggravated criminal sexual abuse, in that, while committing criminal sexual abuse, he displayed a dangerous weapon. Defendant argues that if counsel's performance had not been deficient, he would have requested a jury instruction for the lesser included offense of criminal sexual abuse. Assuming defendant's allegation that he would have elected to have the jury instructed is true, counsel's failure to advise defendant of his Class X sentencing eligibility is not prejudicial under *Strickland* if there is no reasonable probability that defendant would have been found guilty of criminal sexual abuse and acquitted of aggravated criminal sexual abuse. See *People v. Hunt*, 2023 IL App (2d) 220153, ¶ 34. Although "it is possible that with a lesser-included instruction offered the result might have been different," a mere possibility is insufficient to find a reasonable probability of a different result. (Emphasis and internal quotation marks omitted.) *Id.*

6

¶ 17    Defendant argues that R.F.'s statements alleging the firearm had been in physical contact with her mouth and neck are potentially inconsistent with evidence showing only male DNA had been found on the tested firearm. In his brief, defendant relies on *People v. Hari*, 218 Ill. 2d 275, 296 (2006), to characterize this potential inconsistency as "[v]ery slight evidence" that could have made the jury uncertain as to whether he had displayed a firearm while committing criminal sexual abuse.[1] However, defendant's assertion is premised on an inaccurate representation of the evidence. DNA testing conducted on the firearm revealed three individual profiles—one major male DNA profile and two additional minor profiles. As the two minor profiles were deemed unsuitable for comparison, it was never determined whether the contributors of those profiles were male or female. Furthermore, the evidence at trial consistently indicated that defendant displayed a firearm and used it to threaten R.F. during the commission of the offense. DNA testing determined that defendant could not be excluded as being the contributor of the major male DNA profile found on the firearm. Photographs and testimony demonstrated that police recovered the firearm from the floor of the motel room where the incident occurred and that defendant had discharged the firearm inside R.F.'s vehicle. As the evidence strongly supported the jury's verdict finding defendant guilty of aggravated criminal sexual abuse, we cannot say that there is a reasonable probability that the outcome in this matter would have differed had the jury been instructed in the lesser included offense of criminal sexual abuse.

¶ 18    As defendant cannot succeed on his ineffective assistance claim, he argues in the alternative that the cause should be remanded for further proceedings because the court erred in

---

[1]We reference defendant's use of the "[v]ery slight evidence" language he quoted from *Hari* merely to emphasize his characterization of the described evidence as tenuous. Notably, the *Hari* court held that "[v]ery slight evidence" of an affirmative defense triggers the need for a corresponding jury instruction—a proposition that is inapplicable to our analysis here as it does not involve an affirmative defense. See *Hari*, 218 Ill. 2d at 296.

failing to appoint new counsel to further litigate his *pro se* ineffective assistance claim following a preliminary *Krankel* hearing. The State agrees that the court should have appointed new counsel because defendant sufficiently demonstrated possible neglect of the case by establishing that counsel did not advise him of his Class X sentencing eligibility. However, the State contends that remand is not necessary because defendant has now raised his ineffective assistance claims in this appeal.

¶ 19     A defendant is not automatically entitled to the appointment of new counsel to help him further develop a *pro se* ineffective assistance claim. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). To adequately address posttrial *pro se* motions alleging ineffective assistance of counsel and thereby limit issues raised on appeal, it is appropriate for the circuit court to conduct a preliminary inquiry pursuant to the procedure set forth in *People v. Krankel*, 102 Ill. 2d 181, 189 (1984). *People v. Roddis*, 2020 IL 124352, ¶ 34. If the allegations show possible neglect of the case, the court should appoint new counsel. *People v. Jackson*, 2020 IL 124112, ¶ 97. However, if the court determines that the claim is without merit, the court may deny the *pro se* motion without appointing new counsel. *Roddis*, 2020 IL 124352, ¶ 35.

¶ 20     Although defendant only needed to demonstrate possible neglect of his case to be entitled to the appointment of new counsel, it was not improper for the court to deny his *pro se* motion without appointing new counsel because it lacked merit. See *id.* As we have already determined that defendant is unable to demonstrate the requisite prejudice prong of the *Strickland* test, his ineffective assistance claim was legally insufficient to warrant the appointment of new counsel for further proceedings. See *id.* ¶ 68 (denial for lack of merit proper where review of the record reveals defendant was not prejudiced by counsel's performance); *People v. Williams*, 2019 IL App (3d)

8

160132, ¶ 15 (appellate court may affirm on any basis supported by the record, regardless of the circuit court's reasoning).

¶ 21    Even if we were to find that the court erred in failing to appoint new counsel, any such error would be harmless beyond a reasonable doubt. See *People v. Nitz*, 143 Ill. 2d 82, 135 (1991). The record demonstrates that even if new counsel had been appointed, the result would have been the same because defendant's ineffective assistance claim would have been denied for failing to establish prejudice. See *Jackson*, 2020 IL 124112, ¶ 127 (an error is considered harmless if the outcome would have been the same absent the error).

¶ 22    Moreover, defendant's request to remand this cause for the appointment of new counsel and further *Krankel* proceedings as an alternative remedy is unwarranted. The purpose of a *Krankel* inquiry is to allow the circuit court to fully address a defendant's ineffective assistance claims to effectively narrow the issues raised on appeal. *Roddis*, 2020 IL 124352, ¶ 34. However, defendant has already raised, with the assistance of counsel, his underlying ineffective assistance claim on appeal. As our review of defendant's claim has fully resolved this issue, the doctrine of *res judicata* precludes defendant from relitigating his ineffective assistance claim through subsequent *Krankel* proceedings in the circuit court. See *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994) (*res judicata* precludes consideration of ineffective assistance of counsel claims that were previously raised).

¶ 23    B. Failure to Object to Improper Sentencing Factor

¶ 24    Defendant next argues that the court erred when it improperly considered defendant's use of a firearm as an aggravating factor at sentencing. Defendant contends that the court's consideration of this factor was improper because defendant's display of a dangerous weapon was an element inherent in the offense of aggravated criminal sexual abuse. Defendant acknowledges

that this issue was not preserved for review and contends that his counsel was ineffective for failing to object during sentencing.

¶ 25    Generally, a factor inherent in the offense cannot be considered in aggravation at sentencing. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). However, this rule should not be rigidly applied, as such application would "restrict[ ] the function of a sentencing judge by forcing him to ignore factors relevant to the imposition of sentence." *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986). Accordingly, sentencing courts are not obligated to avoid the mention of inherent factors as if they do not exist. *People v. O'Toole*, 226 Ill. App. 3d 974, 992 (1992). In determining whether a defendant's sentence was based on an improper aggravating factor, the reviewing court should consider the entirety of the record rather than focusing on isolated statements by the circuit court. *People v. Larson*, 2022 IL App (3d) 190482, ¶ 29.

¶ 26    The aggravated criminal sexual abuse charge for which defendant was convicted included displaying, threatening to use, or using a dangerous weapon as the aggravating element of the offense. See 720 ILCS 5/11-1.60(a)(1) (West 2020). Here, the court's remarks at sentencing merely mentioned defendant's use of a weapon to emphasize that defendant's criminal status as a felon prohibited him from possessing a firearm at the time he committed the offense. In determining defendant's sentence, the court was entitled to consider defendant's history, character, and potential for rehabilitation. See *People v. Robinson*, 221 Ill. App. 3d 1045, 1052 (1991). Therefore, it was not improper for the court to consider defendant's disregard of the law in possessing a firearm when he was unable to do so legally due to his felonious criminal history, as it directly reflected on defendant's character and rehabilitative potential. The record indicates that the court reached its decision after thoroughly considering the relevant mitigating and aggravating factors, including defendant's prior criminal history, in addition to the nature and circumstances

10

of the case. Furthermore, defendant's sentence falls within the 6- to 30-year statutory sentencing range. See 730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2020). It is not greatly at variance with the spirit and purpose of the law, nor is it manifestly disproportionate to the nature of the offense. See *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). As the court did not rely on an improper factor at sentencing, defendant cannot demonstrate ineffective assistance of counsel for failure to preserve a meritless issue. See *People v. Coleman*, 158 Ill. 2d 319, 349 (1994).

¶ 27                                   III. CONCLUSION

¶ 28        The judgment of the circuit court of Kankakee County is affirmed.

¶ 29        Affirmed.